KANSAS PACIFIC RAILWAY CO. v. JOHN BRADY, *et al.*

1. VERDICT, *When Sustained; Conflicting Testimony.* The question as to when a judgment will be reversed because of an insufficiency of the evidence to sustain the verdict, again considered, and the decision with regard to such question as heretofore made by the supreme court, reaffirmed.

2. CONTRIBUTORY NEGLIGENCE; *Care and Diligence; Question of Fact.* A person who stacks his hay on the open prairie near a railroad track, with dry grass all around the hay, and dry grass intervening all the way from the stack to the railroad track, without taking any means for the protection of his hay from fire, may be guilty of negligence in not taking better care of his property so as to protect the same from fire; and whether he is guilty of negligence or not, is a question of fact for the jury, and not a question of law for the court to decide.

*Error from Pottawatomie District Court.*

ACTION by *John Brady* and *David F. Easton,* as plaintiffs, to recover from the *Railway Company* for injuries to plaintiffs' property alleged to be occasioned by the negligence of the defendant. Trial at the February Term 1875. Verdict and judgment for plaintiffs for $335, and the *Railway Company* brings the case here.

*J. P. Usher,* and *C. E. Bretherton,* for plaintiffs in error.

*A. L. Williams,* and *J. S. Merritt,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by John Brady and David F. Easton against the Kansas Pacific Railway Company for alleged negligence in permitting fire to escape from one of the company's locomotive engines, whereby damage was done to certain property belonging to the plaintiffs. The evidence shows that fire did so escape, and in consequence thereof a hay-stack and a fence around it, both belonging to the plaintiffs, were consumed. The evidence also shows that said engine from which said fire escaped was one of the best of engines, that it was skillfully

constructed, in good condition, and was provided with the best of appliances and all proper appliances for the preven-tion of the escape of fire. The best and safest kind of fuel was used, and the engine was managed by a competent and skillful engineer. The fireman also seems to have been com-petent and skillful, and to have done his duty. But it is claimed that on this particular occasion the engineer was careless and negligent, and regardless of his duty. Whether this is so or not, or rather whether there is sufficient evidence in the case to show *prima facie* that the engineer was negligent, is the first question presented in the case. The evidence tending to show that the engineer was negligent is as. follows: At the time said fire occurred, the weather was dry and windy. A very strong wind was blowing from the south. The plaintiffs' hay-stack was situated about one and one-half or two miles north of the railway. The intervening space was an open prairie, covered with dry grass. The engine from which the fire escaped was one of the best, and the best of fuel was furnished with which to operate it. Other engines passed that same place under similar circumstances without producing fires; yet this particular engine produced three or four different fires, and perhaps a greater number, and the engineer who had it in charge did not even know that it produced a single fire. Taking this whole evidence together, and we think it is sufficient to make out a *prima facie* case of negligence against the engineer. That the engineer should allow his engine to produce so many fires, amidst surrounding circum-stances calling for the greatest vigilance on his part to pre-vent the escape of fire, when a single spark escaping might produce a fire that would spread all over the country and do incalculable damage, and he at the same time not knowing of a single fire being produced, would seem to indicate very strongly that he was not exercising the greatest vigilance in the performance of his duties. We have given only one side of the evidence with reference to the negligence of the engi-neer. The evidence tending to show that he was not negli-

1. Verdict, when sustained; conflicting testimony.

gent we have not given, for it was all parol testimony, such as properly goes to the jury for their consideration, and this court does not weigh conflicting parol testimony for the purpose of reversing judgments.   This court reverses judgments for insufficiency in the evidence only where the evidence most favorable to the findings made in the court below fails to prove *prima facie* some material fact necessary to be found in the case in order to uphold such findings, or where such *prima facie* proof has been rebutted and overcome by that kind of evidence which of itself is conclusive, and whose weight and value belongs to the court to consider, such as written instruments, documents, and record evidence.   The rule would seem to be, that where the verdict of a jury is not sustained by sufficient evidence to make out a *prima facie* case in favor of such verdict, the judgment founded thereon should in all cases be reversed, provided of course that the question is properly presented to the supreme court.   But where the verdict is sustained by evidence sufficient to make out a *prima facie* case, and all the evidence against the verdict is merely in parol, the judgment founded upon such verdict should not be reversed unless some ground for reversal is found other than merely that the preponderance of the evidence is against the verdict.   The case of the *A. T. & S. F. Rld. Co. v. Stanford*, 12 Kas. 369, is a good illustration of these propositions.   In that case the evidence most favorable to the verdict made out a *prima facie* case in favor of all the material findings of the verdict, but the preponderance of the evidence was clearly against some of the findings, and the judgment in that case was sustained. (See also, *K. P. Rly. Co. v. Montelle*, 10 Kas. 126, 127; *K. P. Rly. Co. v. Kunkel*, ante, pp. 146, 168.)

The only other question in this case is, whether the plaintiffs below were guilty of contributory negligence.  Or rather, the only other question is, whether there was any evidence tending to show that the plaintiffs were guilty of contributory negligence; for if there was any such evidence, then the court below erred in refusing to submit the

*2. Contributory negligence.*

question of contributory negligence on the part of the plaintiffs to the jury. The evidence claimed as tending to show contributory negligence on the part of the plaintiffs is substantially as follows: The plaintiffs stacked their hay within a mile-and-a-half or two miles of the railroad, on an open prairie which extended all the way from the hay-stack to the railroad, and which was covered with dry grass. The plaintiffs put a fence around the stack, which was also burned. Every season nearly all the country in that vicinity is burned over. The plaintiffs knew that their property was in danger from fire, and that it ought to be protected. They therefore plowed partially around it, but did not plow all around it, and the fire was communicated to the hay-stack over the ground which was not plowed. The plaintiff Easton testifies among other things as follows:

"The hay and fence were burned on the afternoon of the 6th of November 1874, about 3 or 4 o'clock. Witness (Easton) sent his servants to plow around it, but whether they plowed all around it he does not know. There were grass and weeds around the stack. There ought to have been furrows plowed, and a rod between them burnt out, to prevent the fire from communicating. The wind was blowing very hard the day of the fire," etc.

William Everett testifies among other things as follows:

"It is a common thing for the entire country to be burned over the entire season. Not entirely so this. The growth was not so luxuriant, owing to the drouth. Generally the whole country is burned over every season. I went to the other stacks, [at the time of the fire;] did not go to the plaintiffs'; supposed it was protected."

John A. Storm testifies among other things as follows:

"He (witness) visited the place where the stack of hay of the plaintiffs was burned. It was plowed partly around, but not all the way, and the fire communicated to the stack over that part of the ground not plowed. Where it had been plowed, which was part on the south side and on the east, the fire had not burned."

There is nothing in the record that shows when the plaintiff Easton sent his servants to plow around said hay-stack.

If it was after the fire escaped from the defendant's engine, and before it reached the plaintiff's hay-stack, the question of whether the plaintiffs were not guilty of negligence in not plowing all around their hay-stack, should beyond all doubt have been submitted to the jury. The court could not say under such circumstances that as a matter of law the plaintiffs were not guilty of negligence. The court could have come nearer saying that under such circumstances the failure of the plaintiffs to plow all around their stack was, *per se*, and as a matter of law, negligence. If the plaintiffs even knew of the escape of the fire from the engine before it reached their property, it was their duty to use all reasonable means to avoid the destruction of their property; and a failure to do so would be negligence.

But suppose the plaintiffs did not know anything about said fire until their property had been completely destroyed: then, would it be so utterly impossible under such circumstances for the plaintiffs to be guilty of any negligence, as between themselves and the railway company, that the court below could say as a matter of law that the plaintiffs were not guilty of any negligence? Now it has been laid down as a general rule of law, that no one is bound to anticipate the negligence of others, or to act as though others might be negligent. (*Kellogg v. C. & N. W. Rly. Co.*, 26 Wis. 223.) But it has also been held that this rule of law has its limitations and its exceptions. (*Kesee v. C. & N. W. Rly. Co.*, 30 Iowa, 78, 83.) The rule stated in general terms would seem to be, that all persons must take the risk of accidents, but not of the negligence of others. (As to accidental burnings, see *K. P. Rly. Co. v. Butts*, 7 Kas. 308; *M. K. & T. Rly. Co. v. Davidson*, 14 Kas. 349.) But why should not all persons be required to prepare for a certain amount of *anticipated* negligence? All prudent persons do so; and many decisions of courts seem to have been made upon the theory that all persons are required to do so. All persons are sometimes negligent. Even the most prudent are sometimes lax in the amount of care and vigilance which

*Negligence from want of care and diligence.*

they ought to exercise. All men know this. Then why should not all men be required to anticipate that average amount of negligence which must in the very nature of things be expected to transpire? All men know that fire escapes from railway engines, and that it often escapes from negligence as well as from accident. And so long as human beings are imperfect, all men know that fire will continue to escape from engines from negligence as well as from accident. In the very nature of things this must be so; and fires must always be expected to originate from such a source. Then why should not all men in the vicinity of railroads be required to make some preparation for negligent fires, as well as for accidental fires? Why should they not be required to make such reasonable preparation to avoid loss from fires, as reasonably prudent men in the same vicinity usually and ordinarily do? Would any less degree of care and diligence than this, be regarded as reasonable care and diligence? Would any less degree of care and diligence than this be as much care and diligence as a reasonably prudent man would usually and ordinarily exercise? Do not all reasonably prudent men in the transaction of their own affairs make some preparation for the negligence of others, as well as for accidents? If so, then the general proposition that no man is bound to anticipate the negligence of others, or to make any preparation therefor, would seem to have its limitations or exceptions; for we take it that all men are bound to exercise that degree of diligence to prevent injuries to his own property which a reasonably prudent man would exercise under like circumstances. But let us view this question in another aspect. Permitting fire to escape from a railway engine, whether accidentally or intentionally, is never *per se* negligence. And whether it is negligence in any particular case, always depends upon the particular circumstances of such particular case. Where the fire could do no possible injury to any person or thing, the permitting of the same to escape could never be considered as negligence. Take the present case as an illustration of these proposi-

tions: If on the day that said fire escaped, rain had been descending in copious showers, making everything wet and invincible to fire; or, if all the grass in that vicinity had been green, or had been burned off the day before; or if the ground between the stack and the railway track had been freshly plowed, no one would think of calling the acts or omissions of the defendant in permitting the fire to escape, negligence. Even if a strip of the land around said stack had been freshly burned, or freshly plowed, no one would think of imputing negligence to the railway company as against the plaintiffs, for by no possible contingency could the escape of the fire in such a case injure the plaintiffs. Neither could negligence be imputed to the defendants, if the plaintiffs had stacked their hay on safer ground. The plaintiffs were. not bound to stack their hay where they did stack it, but evidently they could have found some safer ground on which to stack it if they had so chosen. Hence it will be seen that if the defendant was negligent at all as against the plaintiffs, it was about as much because of the acts and omissions of the plaintiffs as because of the acts and omissions of the defendant. If the defendant was negligent at all as against the plaintiffs, it was really as much because said hay was stacked in a dangerous place, and because dry grass was allowed to intervene all the way from the stack to the railway track, as because said fire was permitted to escape. Now as the burning of said hay was the result of the acts and omissions of both the plaintiffs and the defendant, it would seem that the acts and omissions of both parties should have been submitted to the jury. Both parties may have been negligent, and the acts and omissions of both should have been subject to the scrutiny of the jury. But it is claimed that the plaintiffs could not under any circumstances be considered negligent. It is claimed that they had a right to stack their hay as they did stack it, in a dangerous place, with dry grass. all around it, and without taking any precautions for its protection. And this is claimed upon the theory that

every man has a right to use his own property as he pleases without reference to the great inconvenience he may thereby impose upon others. Is this theory, or rather the plaintiffs' application thereof, correct? Suppose that the plaintiffs had owned the land from the railway track to their hay-stack, and that they had the entire possession and control of such land: and suppose that said land had been entirely free from all combustible material, but that the plaintiffs in the exercise of their right to use their own property in their own way had strewn gunpowder along the railway track and from the railway track to their hay-stack: and then suppose that the defendant had negligently, but not willfully or intentionally, permitted fire to escape from one of its engines, and the gunpowder thereby becoming ignited had almost instantaneously communicated the fire to the plaintiffs' hay-stack, and consumed it: could the plaintiff recover from the railway company for such loss? In such a case the plaintiffs would simply have used their own land, their own hay, and their own gunpowder, in their own way, and without molesting any one else, or meddling with any other person's property. Then why could not they recover? Will it be said that they voluntarily chose to suffer the loss? Will it be said that by allowing them to recover it would allow them to so use their own property as to injure the general welfare of others? These would seem to be at least plausible reasons why they should not recover. It is said that the maxim, *sic utere tuo ut alienum non lædas*, has no application in such a case. But if it has not, then some similar maxim should have. Why should any person be allowed to invite the destruction of his own property by his own negligence, so that he might by recovering for the loss thereof lessen the estate of another to that extent? Why should any person be allowed to so use his own property that in the natural course of things he would most likely injure the estate of another to the extent of the value of such property? Or, why should he have it within his power to so use his own property as to make it so hazardous for others to use theirs that such others

must necessarily abandon the use of theirs? The fact is, that all persons in the use of their own property, or in the transaction of their own affairs, should use reasonable diligence to avoid injuries to any property, whether such property belongs to themselves or to others; and generally, in such cases all persons should exercise that degree of diligence which an ordinarily prudent man would exercise under like circumstances were all the property his own. Generally all persons have a right to expect that this amount of diligence will be exercised. In the present case, the plaintiffs had a right to expect that the defendant would exercise reasonable diligence to prevent the escape of fire; and the defendant had a right to expect that the plaintiffs would exercise reasonable diligence to avoid injuries from fire. Neither was bound to suppose that the other would be negligent in this respect. Now it is conceded that the defendant was negligent; but were not the plaintiffs also negligent? If they were, then they cannot recover. They cannot recover for the destruction of property which would not have been destroyed except for their own negligence. If reasonable diligence required that the plaintiffs should have plowed around said stack, then the defendant had a right to suppose that the plaintiffs had done so, and that the stack was protected to that extent; and in such a case the defendant is not liable for the loss of the stack. The defendant is liable in such a case for only so much of the damages which it causes by reason of its negligence as could have not been avoided by the plaintiffs by the exercise of reasonable diligence on their part. If the plaintiffs were in fact negligent, then the negligence of the defendant was in fact founded upon the negligence of the plaintiffs, and was caused thereby. If the plaintiffs in such case had not been negligent in allowing their stack to be exposed, the defendant could not have been negligent as against the plaintiffs in permitting the fire to escape. The exposure of the stack, is what made the escape of the fire negligence. If the stack had been protected, the acts and omissions of the defendant would have been inno-

cent and harmless.    The plaintiffs themselves, by their own acts and omissions, made the acts and omissions of the defendant negligence; and except for their own negligence in not protecting their stack, its loss would never have occurred. Now can they recover because of the negligence of the defendant, when they themselves were the cause of such negligence?    Whether the plaintiffs were in fact guilty of any negligence, we do not know.    There was evidence tending to show that they were negligent; and the question of whether they were or not, should have been submitted to the jury.    But it was not submitted to the jury, and in this we think the court below erred.    The plaintiffs should have exercised that degree of diligence to avoid injuries to their own property by fire escaping from the defendant's engines, which an ordinarily prudent man would have exercised under like circumstances.    As sustaining our view of the question, we would refer to the following cases: *Kesee v. C. & N. W. Rly. Co.*, 30 Iowa, 78; *Garret v. C. & N. W. Rly. Co.*, 36 Iowa, 121; *O. & M. Rld. Co. v. Shanfelt*, 47 Ill. 497, 505; *Ill. Cent. Rld. Co. v. Munn*, 51 Ill. 78; *C. & N. Rly. Co. v. Simonson*, 54 Ill. 504; *Coates v. M. K. & T. Rly. Co.*, 61 Mo. 38; *St. J. & D. C. Rld. Co. v. Chase*, 11 Kas. 47, 56.    See also, upon this question, the following cases: *Fero v. B. & S. L. Rld. Co.*, 22 N. Y. 209; *Cook v. Champlain Trans. Co.*, 1 Denio, 91; *Kellogg v. C. & N. W. Rly. Co.*, 26 Wis. 223; *Salmon v. D. L. & W. Rld. Co.*, 38 N. J. Law, 5.    The last-mentioned cases present the other side of the question, so far as the other side has been presented in any case.

The judgment of the court below will be reversed, and cause remanded for a new trial.

BREWER, J., concurring.

HORTON, C. J., not sitting in the case.