[No. 15806.  *En Banc.*  November 5, 1920.]

RAINIER HEAT AND POWER COMPANY, *Appellant*, v. THE CITY OF SEATTLE, *Respondent*.[1]

MUNICIPAL CORPORATIONS (474, 479) — TORTS — DEFECTS IN WATER MAINS—ACTIONS FOR INJURIES—ESTOPPEL. An owner of property is not estopped from recovering damages from flooding through a break in a city water main by the fact that it petitioned for the improvement for a change of grade and fill, which thereafter caused the break, where the petition did not in the least impair the owner's full enjoyment of his property, whether filled or not, nor contain any agreement other than the city's contract to make the improvement at the contract price.

EVIDENCE (142)—PAROL EVIDENCE TO EXPLAIN JUDGMENT. Where the proceedings and judgment in eminent domain proceedings are unambiguous, parol evidence is not admissible to explain what was litigated and determined.

MUNICIPAL CORPORATIONS (479)—TORTS—DEFECTS IN WATER MAINS —ACTION FOR INJURIES—CONTRIBUTORY NEGLIGENCE. In an action for

[1]Reported in 193 Pac. 233.

damages from flooding through a leak in a city water main, the plaintiff is not guilty of contributory negligence from the fact that it maintained a power plant thirty feet below the new street grade.

SAME (479). In such a case, the owner's contributory negligence in failing to provide sufficient drains to drain a power plant maintained thirty feet below the new street grade may be a question for the jury, if, by so doing, the damages would have been prevented or lessened.

SAME (479). In such a case, the owner was not guilty of contributory negligence in maintaining a tunnel at the low level by permit from the city, without doors or gates, where no duty to maintain gates was shown.

NEGLIGENCE (44) — TRIAL — INSTRUCTIONS — CONTRIBUTORY NEGLIGENCE. In an action for damages from flooding through the break of a city water main, it is error to instruct that the plaintiff could not recover if guilty of any act of negligence which "contributed in any manner," to the damages, since slight negligence not the proximate cause would not defeat recovery.

MUNICIPAL CORPORATIONS (479)—TORTS—DEFECT IN WATER MAIN—ACTIONS—INSTRUCTIONS. In an action against a city for flooding premises, it is error to instruct that the fact of a break in a water main is not in itself proof of negligence, where the main was subjected to high head pressure.

SAME (479). In such a case, plaintiff is entitled to an instruction that it had a right to assume that the city had performed its duty, in the absence of knowledge of any defect in the water main; and also, to an instruction that plaintiff's failure to maintain a sufficient drain was immaterial, if the volume of water from the broken main was so great as to cause the damage regardless of such failure.

Appeal by plaintiff from a judgment of the superior court for King county, Jurey, J., entered September 15, 1919, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages to property through the breaking of a water main. Reversed.

*Griffin & Griffin,* for appellant.

*Walter F. Meier* and *Robert H. Evans,* for respondent.

PARKER, J.—The plaintiff commenced this action in the superior court for King county, seeking recovery

of damages which it claims to have suffered as a result of the negligence of the defendant city, in that the city carelessly and negligently maintained one of its large water mains in such unsafe condition that it broke and caused the property of plaintiff to be flooded, which damaged its plant and the foundations of its buildings. A trial upon the merits resulted in verdict and judgment in favor of the plaintiff, awarding it recovery in the sum of $500. The plaintiff, deeming itself aggrieved by the verdict and judgment, in that the amount of recovery so awarded to it is inadequate, has appealed therefrom to this court.

At the time in question, the city maintained, a few feet under the surface of the street at the intersection of Weller street and Sixth avenue south, a large water main. The main at that point was under a head pressure of over two hundred feet. It had apparently been laid in ground over what was formerly tide land, and just under it at that point was an old pile, which seems to have contributed to the breaking of the main by the latter settling down upon it. The main broke so as to let the entire flow of the water therein escape. In its escape the water tore up a large section of the street pavement, some thirty feet or more across, and overflowed into and under the adjacent buildings and plant of appellant, causing an amount of damage thereto far in excess of the amount awarded by the jury. The award was manifestly made upon the theory that the city had successfully maintained its affirmative defenses as to most of the damage, and that appellant was entitled to compensation for only a small portion of the damage it actually suffered.

It is contended in appellant's behalf that the trial court erred in overruling the demurrer to the city's first affirmative defense, and also in submitting that de-

4—113 WASH.

fense to the jury. It is of little moment here whether we test the ruling of the court as to the sufficiency of this defense by the language of the answer or by the evidence introduced upon the trial in its support. The facts touching this defense may be summarized as follows: Since prior to the year 1905, there has been maintained by appellant and its predecessor in interest, upon the block bounded on the south by Weller street and on the east by Sixth avenue south, a heat and power plant. The plant was originally constructed upon ground lying but a few feet above tide water, the machinery being installed for the most part upon that level, and has been so maintained up to the present time. In October, 1905, the owner of the plant and the land occupied by it, the owner of the other damaged property here in question, and the owners of a large amount of other property in the neighborhood, petitioned the city to institute and prosecute eminent domain proceedings looking to the raising of the grades of the streets in the neighborhood, and improving them at the proposed higher grades. This petition contemplated the raising of the grades of the streets immediately adjoining the plant and other property here in question, approximately thirty feet, which would leave the ground floor of the plant about that distance below the level of the adjoining street. The petition contemplated that the acquiring of the necessary rights by eminent domain proceedings on the part of the city and the making of the physical improvements of the streets at the new grades should be paid for by special assessment against the property in the proposed district benefited thereby. Among other stipulations in the petition are the following:

"The undersigned, in signing this petition, hereby expressly reserve the right to claim a just compensation for the damages to their property caused by the

grading and regrading of the streets embraced in the district. . . .

"The city of Seattle, in entering into a contract for the performance of the said improvement, shall insert therein a provision for and on behalf of any owner of property within the limits of the district as set forth above, who may desire the same to be excavated or filled to an even grade with the streets abutting the same at the time said streets are graded or regraded, and at the price bid by the contractor for the excavation and filling of the streets embraced in said district; provided that where private property is to be filled, the owner may require that said property be not filled above a specified height for the construction of a basement therein.

"Third: That the undersigned do hereby severally stipulate that all private property belonging to them within the limits of the said district may be excavated or filled by said contractor as hereinabove provided, and they do further severally agree, upon demand of said contractor after the execution of the contract between said contractor and the city, to enter into a written contract with said contractor for the performance of said excavation or filling, as may be required by the owner, at the prices bid by said contractor per cubic yard for the grading of the streets embraced in said district; . . .

"It is expressly understood and agreed that the city of Seattle shall in no wise be held responsible for the carrying out of any agreement which may be made between the contractor and the owners of private property within the district for the excavations and fills thereon, as hereinabove set forth; it being expressly understood and agreed that such stipulations shall be entered into by the city of Seattle with the contractor for the improvement solely for and on behalf of and for the use and benefit of the private owners interested. . . ."

Thereafter, in compliance with the petition, the city council passed ordinances establishing the proposed new higher grades of the streets; authorizing the prose-

cution of eminent domain proceedings by the city to
acquire the right to damage abutting property by the
raising of the street grades, including necessary slopes
and fills upon abutting property to retain the street
grades; and providing for the making of the improve-
ment.  It was provided in the ordinance providing for
the construction of the improvement that it should be
made in accordance with the stipulations contained in
the property owners' petition therefor.  Thereafter,
in April, 1906, the city commenced, in the superior
court for King county, eminent domain proceedings
looking to the acquisition by the city of the necessary
rights to enable it to lawfully proceed with the im-
provement, which proceedings resulted in judgments
awarding compensation to numerous owners of prop-
erty which would be damaged by the making of the im-
provement; among others, awarding to the owner of
the block upon which the heat and power plant was
situated $14,500 as damages resulting to that block by
the raising of the grade of the adjoining streets.  The
rights acquired by the city by the terms of that judg-
ment are stated therein as follows:

"Upon payment to said respondents, or into the
registrar of the court, of said amounts and the taxable
costs of these proceedings, if any, the petitioner, the
city of Seattle, shall be entitled, at any time thereafter,
to grade and regrade said streets, avenues, alleys and
approaches thereto, and to enter into possession of
said premises, or such portion thereof as may be neces-
sary, in the construction of said improvements, as pro-
vided for in said ordinance."

Thereafter, in April, 1907, the city having paid the
awards of the eminent domain judgment, it entered
into a contract for the physical improvement of the
streets at the level of the new grades, and in the carry-
ing on of the work took possession of and damaged

private property, as it was adjudged entitled to do in the eminent domain judgment. The city did not take possession of, nor in the least interfere with, the possession and full enjoyment by the owner of the portion of the block occupied by the power plant. We think it is also plain that the city did not acquire by the eminent domain judgment any right to take or damage that particular portion of the block. Testimony was introduced on behalf of the city with a view of showing that the award in the eminent domain proceedings, made to the owner of the land on which the plant was situated, was measured by the expense appellant would be put to in raising the plant to the same level relative to the new street grades as it was to the original street grades; that the owner, in effect, agreed to so raise the level of the plant; and that had he done so, following the improvement of the streets at the new grades, the flooding of the plant would not have occurred. This testimony, together with the stipulations in the petition of the property owners for the raising and improving of the streets, and the condemnation judgment, it was claimed by counsel for the city, worked an estoppel against the then owner, and appellant, his successor in interest, to successfully claim damages in this action for the flooding of the plant.

We think there is nothing for the city's claim of estoppel to rest upon save the stipulations in the petition signed by appellant's predecessor in interest, the conditions of the same import found in the ordinances establishing the new grades and providing for the improvement of the streets at the new grades, and the judgment rendered in the eminent domain proceedings. We have noticed every stipulation and provision to be found in the petition, ordinances, and eminent domain judgment which might in the slightest measure sug-

gest that the owner of the plant agreed to raise its level
or desist from maintaining it as originally constructed.
The owner plainly did not so agree in the stipulations
found in the petition which he signed. He bound him-
self no further, as to the filling of his property, than
that he would employ no one else to do such filling. As
to whether or not the owner would have such work
done, or the extent to which he would have such work
done, was clearly left to his own choosing. Special
care seems to have been taken by the petitioning
owners to avoid any agreement between them and the
city, save only that the city should make such contract
for the excavating or filling of their property with the
city's contractor at the price the city should contract
with its contractor. It is plainly stated in the petition
that such stipulation should be inserted in the contract
entered into by the city with the contractor, "solely for
and in behalf of, and for the use and benefit of, the
private owners interested." It is equally plain that the
eminent domain judgment does not touch the question
of the owner of the plant being under any obligation
whatever to raise it to the higher level. In other
words, the right of the owner of the plant to the full
and absolute enjoyment of it, and the land which it
occupied, was not in the least impaired by the petition,
ordinance or eminent domain judgment. The owner's
title and right of enjoyment of such land and plant re-
mained as absolute at the level of thirty feet or more
below the new street as at the level of the new street
grades. We think that the most elementary principles
of real property law render it plain that an owner of
land lying level with the street grade would be clearly
within his legal rights in excavating a basement thirty
feet deep and placing in the bottom of it such a plant
as the one here in question, so long as he did not dis-

turb the lateral support which the city would be entitled to in maintaining its street at the established grade. We are of the opinion that the city's first affirmative defense is wholly without support as an estoppel, that the trial court erred in submitting that defense to the consideration of the jury, and also erred in the giving of all of its instructions touching that defense.

We have ignored the oral evidence introduced in the city's behalf which it is claimed by counsel supports its first affirmative defense, for the reason, first, that, even if such evidence was admissible, it did not materially tend to support the defense; and second, for the reason that we regard it as wholly inadmissible touching that defense, since the record in the eminent domain proceedings, including the judgment, is plain and unambiguous as to the rights that the city acquired by that judgment, and there is therefore no occasion for the receiving of oral evidence in explanation of what was litigated in that proceeding, or what was determined by the judgment rendered therein.

It is contended in behalf of appellant that the court erred in submitting for the consideration of the jury the city's second affirmative defense, which was, in substance, that of contributory negligence, in three particulars: (1) In that the appellant was negligent in maintaining its heat and power plant at such a low level below the established street grades; (2) in that appellant so maintained its plant without proper drains being provided to enable the water to freely flow therefrom, and that, had appellant provided proper drains, no damage would have resulted to its plant; and (3) in that the appellant maintained in a negligent manner a tunnel across and under Sixth avenue, connecting two of its buildings on opposite sides of the

street, through which the water flowed to its plant, enhancing the damage in excess of what would have occurred had the tunnel been properly constructed and guarded.

We are of the opinion that the maintaining of appellant's plant at the level of approximately thirty feet below the street grades was not contributory negligence, and that it must be here so decided as a matter of law. It may seem that this was maintaining a plant in a basement of unusual depth, but, as we have already noticed, appellant was within its legal rights in so occupying its property. It may have been obliged to anticipate damage from the natural flow of water and the accumulation of surface water, but manifestly it was not obliged to anticipate danger from any such source as the bursting of this water main. In 29 Cyc. 516, the elementary rule touching appellant's rights in this regard is well stated as follows:

"The general rule is that every person has a right to presume that every other person will perform his duty and obey the law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which can come to him only from violation of law or duty to such other person. Hence failure to anticipate defendant's negligence does not amount to contributory negligence, even though he places his property in an exposed or hazardous position."

As to appellant being guilty of contributory negligence in that it failed to provide drains as required by city ordinances for the carrying off of water, we think that may become a question for the jury upon a new trial, because it might be that the providing of such drains as the ordinances may have required would have carried off the water coming from the burst main and prevented or lessened the damage which resulted

to appellant. It is true that, upon the evidence in this record, there is strong ground for arguing, as counsel for appellant do, that in no event could any such drains have carried off this flood of water· so as to avoid, or even lessen, the damage done appellant. We think, however, that question should be left for determination upon a new trial.

. As to appellant's being negligent in not properly maintaining the tunnel, we feel constrained to hold that neither the pleadings nor proof show any contributory negligence in this particular. The only alleged and proven facts as to the tunnel are that it existed by permit from the city, and did not have doors or gates to close it. There is no allegation or proof that appellant had any duty to maintain such doors or gates.

In view of our conclusion that there must be a new trial of this case, we deem it proper to here say that we think the trial court was correct in taking from the consideration of the jury the third affirmative defense. We arrive at this conclusion looking at the pleadings only.

It is contended in behalf of the appellant that the trial court erred in its instruction to the jury as follows:

"If the plaintiff was guilty of any act of negligence· alleged against it in the answer of the defendant city which *contributed in any manner to the damages* to said heating plant for which plaintiff sues, it is your duty to deny plaintiff the right to recover any damages to said heating plant."

We have italicized the words to be particularly noticed. .This instruction, we think, is erroneous under the decisions of this court in *Spurrier v. Front Street Cable R. Co.,* 3 Wash. 659, 29 Pac. 346; *Cowie v. Seattle,* 22 Wash. 659, 62 Pac. 121; and *Atherton v. Tacoma R. & Power Co.,* 30 Wash. 395, 71 Pac. 39; the instruc-

tion putting upon the appellant a higher degree of care than the law burdens it with. Appellant's contributory negligence may not have been the proximate cause of the damage, and still it might have been a slight condition contributing to the damage in some manner. If its negligence contributed only in such small degree, such negligence would not prevent recovery.

It is contended in behalf of appellant that the trial court erred in instructing the jury as follows:

"You are instructed that the mere fact that the water main broke is not in itself proof of negligence, but that negligence charged must be shown by facts entirely independent of the fact that the water main did break."

We think this instruction is erroneous. It seems to us that a water main situated as this one was, under such great pressure by reason of the high head of water, suggests the duty of a high degree of care on the part of the city in maintaining it, and that its bursting is some evidence of want of proper care on the part of the city in maintaining it. This view, we think, finds support in *Anderson v. McCarthy Dry Goods Co.,* 49 Wash. 398, 95 Pac. 325, 126 Am. St. 870, 16 L. R. A. (N. S.) 931; *Abrams v. Seattle,* 60 Wash. 356, 111 Pac. 168, and *Lennon v. Seattle,* 69 Wash. 447, 125 Pac. 770. It is true that this alleged error proved to be without prejudice, in view of the fact that the jury found that the city was negligent, otherwise it could not have awarded recovery, even in the small amount of $500, to appellant; but since the question of the city's negligence will necessarily be involved in a new trial, we feel called upon to notice this error.

It is contended in behalf of the appellant that the trial court erred in refusing to give to the jury the following instruction requested by its counsel:

"I charge you that the plaintiff was not required to anticipate that the defendant would be negligent in selecting, inspecting, placing or maintaining its water mains. It has a right to assume that the city would exercise reasonable care in selecting, inspecting, placing and maintaining its water mains so that they would not break or flood property lawfully kept in the locality where such water mains are located, and in the absence of knowledge that a defective water main had been installed or maintained, the plaintiff would not be guilty of contributory negligence by assuming that the city had fully performed all its duties relative to inspecting, placing and maintaining its water mains."

What we have already said, we think, renders it plain that appellant was entitled to this instruction, or one of substantially the same import. Critical examination of the numerous instructions given may possibly disclose that this view of the law was covered in the instructions, but we hardly think it was. We make this observation more because of what will probably occur upon a new trial, rather than as holding that prejudicial error was committed by the refusal to give the instruction upon the former trial.

It is contended in appellant's behalf that the trial court erred in refusing to give to the jury the following instruction requested by its counsel:

"I charge you that if you find from a fair preponderance of the evidence that the quantity of water which escaped from the broken main and flooded the plaintiff's property was so great that the plaintiff would have sustained the same or as much damages regardless of whether it had a sufficient and good drain or not, then the matter of maintenance of a drain was and is entirely immaterial and you should disregard the same."

It seems to us that appellant was entitled to this instruction, or one of substantially the same import, for plainly, if the flood of water was so great that no

proper drains from appellant's plant could have taken care of the water and prevented or lessened the damage, the failure to maintain such drains would not have prevented recovery on the part of appellant.

We conclude that the judgment should be reversed, and the cause remanded to the trial court with directions to award appellant a new trial consistent with the views herein expressed.

It is so ordered.

ALL CONCUR.