Robert LEAVEL et al., Appellants,

v.

KENTUCKY UTILITIES CO., a corporation, Appellee.

Court of Appeals of Kentucky.

Feb. 18, 1955.

McCann, Sledd & McCann, Lexington, Pat Rankin, Stanford, for appellants.

Stoll, Keenon & Park, Lexington, Cabell Francis, Stanford, for appellee.

WADDILL, Commissioner.

Robert Leavel and John Maupin appeal from a judgment against them in the sum of

$5,620 in an action brought by the Kentucky Utilities Company for damages alleged to have been caused to its electrical lines and equipment by the negligence of appellants' agent in the operation of a truck.

Upon trial of the case it was shown that on the evening of January 23, 1952, a truck, which was being driven by the appellants' agent, ran off the highway and into a utility pole owned by the Kentucky Utilities Company. The accident occurred on a straight stretch of U. S. Highway 39, and no other vehicle was involved. The pole into which the truck crashed was located about 20 feet from the edge of the paved portion of the highway on an easement owned by the appellee. The pole was broken by the impact, causing the attached high-voltage wires to fall and short circuit a transformer. The amount of damage incurred by the accident was brought in issue by conflicting testimony.

Following a hearing of the evidence, the court directed a verdict in favor of appellee, and submitted to the jury the question as to the amount of damages that should be assessed. This appeal is from a judgment entered upon a verdict of $5,620 in favor of appellee.

█ The appellants contend that appellee failed to establish with any degree of certainty the amount of damages that were incurred by reason of the accident. However, we find that J. H. Bailey, division engineer for appellee, testified that he holds a bachelor of science degree in electrical engineering from the University of Georgia and has been employed as an electrical engineer for the last twenty years; that he was familiar with the transformer in question, and in his opinion the reasonable market value of the transformer immediately before the accident was $10,000 and its value immediately after the accident was $200. Other employees of appellee testified that the actual cost of repairing the transformer was $7,325; that the transportation costs were $1,300; line replacement costs were $130.31; and the amount expended for labor in repairing the line was

$290.16. We think the evidence was amply sufficient to sustain the verdict.

█ In this connection it is also urged that the court erred in excluding the answer given by G. L. Kerlin to a question asked him concerning the original cost of the transformer; and it is further urged that the court should have permitted appellee's bookkeeper to give the estimated value of the transformer as disclosed by the appellee's books. There is no merit in either of these contentions. The record in the case reflects that when Mr. Kerlin was interrogated as to what the original cost of the transformer was in 1929, his answer, placed in record by avowal, was that he did not know. The question propounded to the appellee's bookkeeper was so obviously incompetent we shall not discuss it further.

█ The appellants further contend that the court erred in directing a verdict for appellee because the damage to the transformer was not the natural and proximate result of the negligent act of appellants' driver in crashing the truck into the pole. In support of this contention the appellants urge that certain forces of nature could have caused the short-circuit in the line, such as trees blowing against it, or lightning, or squirrels running on the line. Of course, numerous things could have caused the damage to the line and transformer, but this would be mere speculation. The appellee introduced witnesses, who qualified as experts, who testified the damage to the transformer was caused by a fault occurring on high-voltage lines which was brought about by the accident. The appellants did not present any evidence showing that the damage was brought about by any other cause. Therefore, we find no merit in this contention.

█ The last ground urged for reversal is that the court erred in refusing to permit appellants to introduce evidence concerning improper maintenance of appellee's electrical equipment, thereby making appellants' plea of contributory negligence ineffectual. Appellants contend that the

court should not have excluded evidence relating to the failure of the circuit breaker to operate, and other testimony to the effect that if additional fuses, or other safety devices, had been installed on the high-voltage line of appellee, the damage to the transformer might have been averted, or the damage lessened.

■ This raises the question as to whether or not there is any duty on the part of a utility company to maintain its equipment in a certain manner for the benefit of that class of individuals who negligently damage its poles and wires. We agree with the appellants that those who provide channels which transmit electricity must exercise the utmost care and employ the most modern devices to prevent the destruction of life or property. Clark's Adm'r v. Kentucky Utilities Co., 289 Ky. 225, 158 S.W.2d 134. But this rule applies to a duty owed the public generally and not to a class such as the appellants. We have said that the failure to anticipate negligence which results in injury or damage is not negligence and will not defeat an action for the injury. Guyan Chevrolet Co. v. Dillow, 264 Ky. 812, 95 S.W.2d 796.

The case of Atlas Assurance Co. v. State, 102 Cal.App.2d 789, 229 P.2d 13, 18, involved facts very similar to those in this case. In that case the State of California was operating a railroad. A refrigerator car was on a spur track too near the main line to permit clearance of cars on the main line. A train struck the refrigerator car and knocked it over and down an embankment where it struck a pole in a power line owned and operated by the Pacific Gas and Electric Company. This pole and other adjacent poles were broken by the impact, causing the wires to sag and fall on wires on another line which ran underneath and perpendicular to the damaged line. The wires shorted, burned off and fell into the street. At that time a fire occurred at the generating station of the power company, where insulating oil in regulators and transformers was ignited, resulting in the destruction of valuable equipment. The extent of liability for the loss was in dispute, the State claiming that it was liable only for the damage to poles and lines located outside the generating station.

The power company's insurance carrier paid the power company and an action was instituted by the insurance company to recover from the State the amount it paid. The action was based on the negligence of the State in the operation of its railroad. The State attempted to rely upon the defense of contributory negligence, by showing the failure of the power company to properly maintain and equip the substation. All such evidence was excluded. The court quoted the rule found in 65 C.J.S., Negligence, § 118, p. 713, where it is stated:

" 'It has generally been held that the rule which requires one to exercise ordinary care to protect himself from the results of the negligence of others is subject to the exception that, as a person is entitled to use his own premises for any lawful purpose, his failure to protect them from the negligence of another will not be contributory negligence.' * * *"

The court went on to say:

"How under such circumstances there could be a defense that there was contributory negligence on the part of the power company which proximately contributed to the fire in the substation we are unable to understand. If the freight car had not been thrown from its track by the admitted negligence of appellant there would have been no fire in the substation. The power company was conducting a lawful enterprise on its own property, and on property over which it had a right of way, * * *, and we do not believe it could be expected to anticipate and guard against any such accident as occurred in the instant case. If appellant's theory were correct it would be interesting to try to calculate what degree of precaution would have to be taken by the power company to avoid the defense of contributory negligence. As stated by the

U. S. Supreme Court in Leroy Fibre Co. v. Chicago, M. & St. P. Ry. Co., (232 U.S. 340, 34 S.Ct. 415, 58 L.Ed. 631), 'Depart from the simple requirement of the law, that everyone must use his property so as not to injure others, and you pass to refinements and confusing considerations.' "

We believe that the opinion rendered in the Atlas Assurance Co. case, 102 Cal.App. 2d 789, 229 P.2d 13, applies equally as well to the case under consideration. Therefore, we are of the opinion that the court was correct in excluding the evidence offered by appellants relating to improper maintenance.

In view of the conclusions we have reached, the judgment is affirmed.

HOGG, J., not sitting.