No. 46,695

MID-CENTURY INSURANCE COMPANY, *Appellant*, v. KATHLEEN B. LATIMER, *Appellee*.

(508 P. 2d 935)

Opinion filed April 7, 1973.

*Kenneth I. Rock,* of Dickerson and Rock, Chartered, of Overland Park, argued the cause and was on the brief for the appellant.

*R. David Lamar,* of Smith, Rushfelt, Mueller and Lamar, of Kansas City, Kansas, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: The primary issue in this case is whether a landowner may, by his own contributory negligence, be barred from recovering for fire damage to his property caused by the negligence of an invitee on his premises.

The fire occurred on August 29, 1968, at the home of Robert and Sharon King in Prairie Village, Kansas. The appellant Mid-Century Insurance Co., which had written the fire insurance policy on the Kings' house, paid their loss in the amount of $6,125.89. Then, exercising its right of subrogation, it brought this action to recoup the loss from the appellee, Mrs. Latimer, claiming the fire was the result of her negligence. (Her husband was originally a defendant also, but was dismissed from the action before trial.) The case was submitted to a jury on the dual issues of Mrs. Latimer's negligence and the contributory negligence of the Kings. The jury returned a general verdict in favor of Mrs. Latimer, and the insurance company appeals.

The Kings and the Latimers were neighbors. Just as the Kings were ready to go to Michigan on vacation Mrs. King asked Mrs. Latimer for a neighborly favor. Would she, Mrs. King asked, keep an eye on the house while they were away? This would entail at least a daily tour of the house, conspicuously made for the benefit of potential burglars; taking in the mail; and, most important, feeding the cat. Mrs. Latimer readily agreed, took the house keys, and set out on the course that would lead to this suit.

In the course of her neighborly chores Mrs. Latimer soon discovered that the King cat had worms. Since she had a cat of her own which she wished to avoid contaminating, she decided to feed and medicate the King cat in the King's basement. On the fateful day the morning feeding and dosing were uneventful, and she left the cat shut in the basement. She returned at dusk and approached the basement stairs. Wanting light in the basement she flipped the switch, but got no light. Looking about, she saw an extension cord coming up the stair bannister, looping over the bannister top, with the plug hanging down within a few inches of the floor. About ten inches away she spied another plug hanging at about the same

level. Thinking this might be a jury-rigged basement light, she joined the plugs. There was still no light, so Mrs. Latimer went downstairs, fed the cat, and went on home. She did not separate the plugs.

What Mrs. Latimer didn't notice was that the second plug belonged to an electric charcoal starter hanging in the attached garage. Because there were no outside electric outlets, the extension cord from the basement had been strung by Mr. King for starting charcoal fires on the patio. Mrs. Latimer didn't know about this arrangement while the Kings, of course, did. (They also knew about the malfunctioning basement light, although they didn't know whether the trouble lay in the switch or in the bulb.) Nature took its course; the plugged-in charcoal starter heated up and some three hours later set the garage on fire.

The pretrial order included allegations of the Kings' contributory negligence in their leaving the wires and plugs in such close proximity, and in their failure to warn Mrs. Latimer of either the presence of the charcoal starter or the inoperability of the basement light. The claim was that the combination of circumstancs was an invitation to Mrs. Latimer to do just what she did.

Appellant contends that contributory negligence shouldn't have been an issue in the case at all—that all such allegations should have been stricken on its several motions, that no instruction on the issue should have been given to the jury, and that the defendant should not have been permitted to argue contributory negligence to the jury. It contends that where real estate is injured through the negligence of another, the contributory negligence of the landowner is no defense.

The argument is based on two maxims: first, a person is entitled to use his own premises for any lawful purpose; and second, one is not obliged to anticipate another's negligence. Cf., 57 Am. Jur. 2d, *Negligence,* § 351; 65A C. J. S., *Negligence,* § 118 (1). We have no quarrel with these propositions. They are each reflected, individually, in many of our decisions. They are sound, and we reaffirm them now. The difficulty arises in combining them into the proposition contended for by appellant, *i. e.,* that contributory negligence can *never* be a defense to an action for negligent damage to real estate. Such an absolute rule is a much greater conclusion than the sum of its constituent parts.

The cases appellant relies on are those where the damage was caused by an uninvited outside agency invading the injured prem-

ises. In those cases the courts have held that the owner has no duty to anticipate such invasions, and failure to take special precautions to prevent injury from sources which one is not bound to anticipate does not constitute contributory negligence. On close analysis we do not think they support any such absolute rule as that contended for by appellant here.

In *Rainer Heat & Power Co. v. Seattle*, 113 Wash. 95, 193 Pac. 233, the plaintiff's plant was located thirty feet below street level, and was flooded by a break in a high pressure water main caused by the alleged negligence of the city. Upon the theory that it constituted a lawful use of the property, the mere maintenance of the plant at so deep a level was held not to be contributory negligence. However, the adequacy of plaintiff's drains did present a justiciable issue of contributory negligence. Although not obliged to anticipate a bursting water main, plaintiff was required to anticipate normal drainage, and to have drains adequate for this purpose and which met official standards. Whether plaintiff's drains met these standards and if not, whether drains that did would have prevented or lessened the damage, were jury questions.

In *North Bend Lum. Co. v. Seattle*, 116 Wash. 500, 199 Pac. 988, the same court held that a lumber company was making "proper and customary use" of its property in building a log dam on a stream. When the city's upstream dam burst and flooded plaintiff's mills, the fact that company officers may have suspected the instability of the city's dam did not render the company contributorially negligent. The company was not bound to limit its lawful use of its property merely because, if the city should prove negligent, such use might increase the company's damage.

In so holding, the Washington court relied in part on a Texas decision involving a farmer whose crop had been washed out once by reason of an insufficient road culvert, but who had nevertheless planted again. This was not contributory negilgence as to a second washout, the court holding:

". . . The owner in lawful possession of his land is entitled to use it in any lawful manner he may desire for any purpose for which it may be adapted. The owner in the exercise of this right is not guilty of negligence if he does not anticipate the results and consequences of acts that are remote and may never happen, *and of which he is not the promoting cause. The negligence that would defeat his recovery must be such as would proximately contribute to the injury.*" (*Clark v. Dyer*, 81 Tex. 339, 344, 16 S. W. 1061. Emphasis added.)

Reasonable anticipation was also the key in *Kleinclaus v. Marin Realty Co.*, 94 Cal. App. 2d 733, 211 P. 2d 582. There the plaintiff had permitted a drainage ditch located on his airfield to become clogged. The defendants pumped water from a nearby canal onto land adjoining plaintiff's, from which it seeped through dikes onto plaintiff's airfield and completely flooded it. Defendants' actions were conceived to be clearly negligent, so the issue was whether allowing the ditch to become clogged was contributory negligence. On rehearing the court said:

". . . we are satisfied with the correctness of our previous conclusion that plaintiffs were under no duty to anticipate defendants' negligent invasion of their land or to have any drainage facilities on their land to carry off water negligently cast thereon by defendants." (p. 736.)

The same reasoning has been applied in cases where an electric utility sues for the damage to its system caused by a negligent collision with its poles, either by a truck (*Leavel v. Kentucky Utilities Co.*, 275 S. W. 2d 792 [Ky., 1955]) or a derailed train (*Atlas Assur. Co. v. State of California*, 102 Cal. App. 2d 789, 229 P. 2d 13). Inadequacy of circuit breakers or a substation to handle the overload from the resulting short circuit is not contributory negligence because the company has no duty to anticipate this type of negligent invasion of its property. Hence, damage to remote equipment caused by the overload is recoverable, as well as that to the pole and wires immediately affected.

In the days of steam locomotives cases involving fire damage from engines emitting sparks were common, and of these Kansas had its share. They culminated in our leading case, *Walker v. Railway Co.*, 76 Kan. 32, 90 Pac. 772, which is extensively annotated at 12 L. R. A. (N. S.) 624. There the fire had run through a young orchard abutting the tracks. Plaintiff had raised corn in the same field, and after harvest the field was filled with dried stalks, crabgrass and weeds. This, it was contended, amounted to contributory negligence. Not so, said this court:

"Farmers through whose lands a railroad is operated may cultivate and use such lands in accordance with the methods customary among farmers, and are not required to take unusual precautions against loss from fire negligently set out by a railroad company." (Syl. ¶ 1.)

But the opinion goes on to say:

"If the plaintiff used his land for legitimate purposes, and in the manner usually followed by other farmers, he cannot be deprived of redress for injuries resulting from the negligence and wrong of another. Of course, this does not

mean that a person can invite and increase peril or needlessly and recklessly put his property in a position of known danger and be free from fault. That *is not the usual or reasonable method of farming,* and therefore if it were shown that the owner needlessly stacked or stored combustible material unnecessarily close to a railroad, and perhaps if it appeared that he placed or permitted accumulations perilously close to the track, and contrary to the practical and customary method of farming in the country, it would be such evidence of contributory negligence as should be submitted to a jury." (p. 35.)

And further:

". . . As has been seen, an owner cannot needlessly thrust his property in the way of danger, nor safely depart from the customary methods employed by others. This view has already been recognized, as well as the rule that after a fire has been started an owner should use reasonable diligence and effort to protect his property from destruction. (*St. Jos. & D. C. Rld. Co. v. Chase,* 11 Kan. 47; *K. P. Rly. Co. v. Brady,* 17 Kan. 380; *C. B. U. P. Rld. Co. v. Hotham,* 22 Kan. 41; *K. C. Ft. S. & G. Rld. Co. v. Owen,* 25 Kan. 419; *Mo. Pac. Rly. Co. v. Kincaid,* 29 Kan. 654; *A. T. & S. F. Rld. Co. v. Ayers,* 56 Kan. 176, 42 Pac. 722; *Railroad Co. v. League,* 71 Kan. 79, 80 Pac. 46.)" (p. 36.)

There being no evidence that plaintiff there had departed from the customary usage of farmers in the area, or had unnecessarily piled up the combustible material, contributory negligence was not a proper jury issue *in that case.* In some of the earlier cases cited by the court, whether hay stacks were so close to the tracks as to amount to contributory negligence *was* a jury question.

The Walker case was followed a few months later by *Railway Co. v. Mosher,* 76 Kan. 599, 92 Pac. 554, another railroad fire case in which the court approved the following instruction:

"It is the law that even though you should find from the evidence that the defendant railway company was negligent in the operation of its line of road through the land of the plaintiff, and the plaintiff suffered damage thereby, still, *if the plaintiff by any acts of negligence on his part directly contributed to the cause of the damages he cannot recover.* If you find from the evidence that the plaintiff used his land in question with a reasonable amount of care and prudence, that is, with such care and prudence as would be used by a reasonably careful and prudent man under such circumstances, and for the purpose for which his said land is adapted, and while so using the land the grass and other combustible matter acumulated which was consumed by the fire, this would not be contributory negligence which would prevent his recovery; but *if on the other hand he failed to use such care and prudence as would be used by a reasonably careful and prudent man in handling his said land, and such want of reasonable care and prudence directly contributed to the cause of the damages which he has suffered, then we would not be entitled to recover."* (p. 603. Emphasis added.)

Thus it may be seen that this court has long been committed to a rule that the landowner's freedom to use his premises in any lawful

manner is not an absolute, but is subject to the important qualification that such use be "ordinary" and "usual," conforming to the standard of care expected of the reasonable prudent man. Failure to conform to that standard, even by a landowner, constitutes contributory negligence. This is the idea expressed in the Restatement of the Law of Torts, Second, § 498:

"The rules which determine whether a plaintiff's conduct amounts to contributory negligence which will bar his recovery against a negligent defendant for harm caused thereby to the physical condition of the plaintiff's land or chattels are the same as those which determine whether the plaintiff's conduct amounts to contributory negligence barring his recovery for bodily harm caused to him by the negligence of the defendant."

Apart from our own cases, we find appellant's contention met head on and forcefully rejected in *St. L. S. W. Ry. Co. of Texas v. Arey,* 107 Tex. 366, 179 S. W. 860. The question there arose as to whether it was contributory negligence to leave windows open on the track side of a barn some 108 feet away from the track, with loose oat straw scattered about near the windows. The court rejected the rule that there could never be contributory negligence in such a case, saying:

"It is unnecessary to here restate that the owner of premises has the full beneficial right to their free enjoyment for all lawful purposes, for it has often been unmistakably so declared by this court. It is a right which is not limited by another's use of his property; nor is it subject to the servitude of another's wrongful use of the premises. That the owner is not bound to anticipate another's negligence, is also true; as it is likewise true of men, generally, in the use of their property and the conduct of themselves. But the doctrine of contributory negligence is not related to these considerations, and is not defeated by them. It is founded, as has been said, on the mutuality of the wrong; the impolicy of allowing a party to recover for his own wrong; and the policy of making personal interests of men dependent upon their own prudence and care. It recognizes that one's use of his premises or his property, as well as his conduct, may be perfectly lawful; and also that in either using his property or in his conduct, he is not bound to anticipate the negligence of another. But it declares that notwithstanding this, a man may not court or invite injury to his person or property." (p. 369.)

The exact sequence of logic contended for by appellant here was dismissed in the following language:

"It is not a question of the lawful use by an owner of his premises. It is a question of his negligent use of them; and the legal consequence of such use when it is directly responsible, in whole or in part, for injury to the owner's property. If others in the lawful use of their property are required to exercise ordinary care to prevent its negligent injury or destruction, what is there in the situation of an owner or lessee of premises like these that creates for him

a different rule? It clearly does not lie in the fact that his use of the premises is lawful. Nor does it rest in the maxim that no one is bound to anticipate another's negligence, for that is a principle of general application. No other ground for the distinction is advanced in the authorities which affirm the proposition. It is not believed that any other can be urged; and neither ground, in our opinion, is sound." (p. 370.)

That case has recently been followed in *Andrews v. East Texas Theaters*, 289 S. W. 2d 781 (Tex. Civ. App., 1956), holding that contributory negligence was a proper issue when weeds, scrap lumber, firewood and sawmill waste were accumulated on plaintiff's land and set afire by sparks from a neighboring incinerator. It was also followed in *Nashville, C. & St. L. Ry. v. Nants*, 167 Tenn. 1, 65 S. W. 2d 189, where the failure of the plaintiffs to remove inflammable vines and leaves from their building presented a submissible issue of contributory negligence.

We think the foregoing demonstrates the error in appellant's basic contention that a landowner can never be guilty of contributory negligence. Even where the destructive agency is external and uninvited, active negligence, failure to conform to ordinary and customary usage, or failure to anticipate the obvious, will bar recovery; failure to take extraodinary precautions against acts of negligence one is not bound to anticipate will not.

Of course here we have no uninvited and unexpected intrusion of the King's premises. Mrs. Latimer was there at the Kings' express invitation, and for their exclusive benefit. Had Mrs. Latimer been injured in the fire and brought suit against the Kings we would have applied the familiar axiom that "The owner or occupant of premises is charged with the duty of exercising reasonable care to keep the premises in reasonable safe and suitable condition so as to avoid injury to an invitee or of warning an invitee of concealed perils of which the owner or occupant knows or should know by the exercise of reasonable diligence." (*Graham v. Loper Electric Co.*, 192 Kan. 558, 562, 389 P. 2d 750, and cases cited therein.) The contributory negligence issue then would have been Mrs. Latimer's failure to unplug the wires. The negligence charged would have been the creation by the Kings of a condition which presented a trap for the unwary and therefore was not reasonably safe, and their failure to warn. Both, we think, would have been submissible issues.

The real answer to the present problem we think depends on the question of causation, coupled with foreseeability and the duty to

anticipate danger. The principle underlying the doctrine of contributory negligence is that one should not be able to recover damages for injuries which he himself has caused through his own negligence. An intervening cause, such as the negligent act of a third person, will absolve a plaintiff from responsibility for his negligence—but only if the intervening force could not be reasonably foreseen. The Restatement of Torts, Second, puts it this way (§ 447):

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."'

In their comments on this section the restaters observe:

"The words 'extraordinarily negligent' denote the fact that men of ordinary experience and reasonable judgment, looking at the matter after the event and taking into account the prevalence of that 'occasional negligence, which is one of the incidents of human life,' would not regard it as extraordinary that the third person's intervening act should have been done in the negligent manner in which it was done. Since the third person's action is a product of the actor's negligent conduct, there is good reason for holding him responsible for its effects, even though it be done in a negligent manner, unless the nature or extent of the negligence is altogether unusual."

It is on just such an analysis that we are today upholding a landowner's liability for damages caused by the presence of his horses on a highway. (*Cooper v. Eberly*, 211 Kan. 657, 508 P. 2d 943.) The owner's duty, we are saying, was to foresee the possibility that some third person might negligently or even intentionally leave a pasture gate open through which the horses might escape. Foreseeing this likelihood, he was under a duty to take reasonable steps to prevent it. We are holding:

"The rule that the causal connection between the actor's negligence and an injury is broken by the intervention of a new, independent and efficient intervening cause, so that the actor is without liability, is subject to the qualification that if the intervening cause was foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause.

"If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

"If there is some probability of harm sufficiently serious that ordinary men would take precautions to avoid it then failure to take such care is negligence." (*Cooper v. Eberly*, supra, Syl. ¶¶ 2, 3 and 4.)

See also *Steele v. Rapp*, 183 Kan. 371, 327 P. 2d 1053; *George v. Breising*, 206 Kan. 221, 477 P. 2d 983; *Gard v. Sherwood Construction Co.*, 194 Kan. 541, 400 P. 2d 995.

In this case the question is whether the Kings, knowing the basement light was out and knowing the proximity of the cords, should as reasonable prudent persons have anticipated Mrs. Latimer's need for light in the basement and the attempt she made to secure it. If so, they should have either moved the wires or warned Mrs. Latimer. We think the question of foreseeability was one on which resonable minds might differ. Hence contributory negligence was a proper issue to be submitted to the jury. *Abston v. Medora Grain, Inc.*, 206 Kan.727, 482 P. 2d 692, Syl. ¶ 7.

Appellant also alleges error in not directing a verdict on Mrs. Latimer's negligence. The test, once again, is whether reasonable minds might differ. *Morris v. Hoesch*, 204 Kan. 735, 466 P. 2d 272, Syl. ¶ 4. We cannot, under this test, say as a matter of law that any reasonable person would foresee that the wires, located as they were, would produce disaster if left plugged together. Therefore, whether her failure to unplug the wires was negligence was a jury question.

We conclude that the trial court did not err in submitting both negligence and contributory negligence to the jury. The judgment is therefore affirmed.

APPROVED BY THE COURT.