NOT DESIGNATED FOR PUBLICATION

No. 124,700

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEVE LANGVARDT,
*Appellant*,

v.

MICHAEL PETITJEAN and KNIGHT FARMS, INC.,
and INNOVATIVE LIVESTOCK SERVICES, INC.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Reno District Court; KEITH E. SCHROEDER, judge. Opinion filed October 28, 2022.
Affirmed in part, reversed in part, and remanded with directions.

*Scott J. Mann* and *Jesse Tanksley*, of Mann Wyatt Tanksley, of Hutchinson, for appellant.

*Thomas A. Dower* and *Tracie R. England*, of Gilliland Green LLC, of Hutchinson, for appellees.

Before SCHROEDER, P.J., MALONE, J., and TIMOTHY G. LAHEY, S.J.

SCHROEDER, J.:  Steve Langvardt and Michael Petitjean worked for different employers in a common office space. Langvardt was severely injured when he fell through a trap door which was left open in the office's storeroom. Langvardt sued Petitjean and Petitjean's employer, Knight Farms, Inc., alleging Petitjean negligently left the trap door open and Knight Farms was vicariously liable for Petitjean's actions. Langvardt alternatively argued Knight Farms was at fault on the basis of premises liability because Petitjean knew the trap door was open but failed to close it.

1

The district court granted summary judgment in favor of Petitjean and Knight Farms, finding there was no evidence Petitjean breached any legal duty to Langvardt. Langvardt moved to reconsider; the district court denied his motion. Langvardt now appeals, arguing the district court erred (1) when it granted Petitjean's motion for summary judgment on Langvardt's claims for premise liability and ordinary negligence and (2) when it denied Langvardt's motion for reconsideration.

Following a review of the record, we find the district court properly granted summary judgment on Langvardt's premises liability claim. However, the district court erred in granting summary judgment on Langvardt's ordinary negligence claim as outlined in Langvardt's motion for reconsideration. Although there was conflicting evidence as to who opened the trap door, the evidence supported a reasonable inference Petitjean opened it. Because it was undisputed Petitjean knew the trap door was open and failed to close it, the district court erred in finding Petitjean did not owe or breach any legal duty to Langvardt. Accordingly, we affirm in part, reverse in part, and remand with directions.

FACTS

Langvardt worked for Innovative Livestock Services, Inc. (ILS), which owned the office building in Lyons where Langvardt worked. ILS also leased part of its office space to Knight Farms. At the time of the relevant events, seven people regularly worked in the office. Three worked for ILS—Luke Knight, Lisa McKinnis, and Langvardt—and four worked for Knight Farms—Michael Petitjean, Shawna Clark, Kenny Knight, and Tamara Knight. ILS also had around 15 employees working in its feedlot who occasionally entered the office.

There was a small storeroom in the northeast corner of the office where a variety of items were kept, including animal health supplies and other animal-related items that

2

were stored on shelves. On the north end of the storeroom was a trap door in the floor, which opened to a crawl space approximately 5 feet deep. A ladder was kept under the trap door placed against its edge so people could climb down into the crawl space.

On the morning of Monday, October 15, 2018, Langvardt went into the storeroom to take inventory of the veterinary supplies on shelves along the east wall. Langvardt took inventory forms with him and began counting the supplies. Unbeknownst to Langvardt, the trap door had been left open. But he did not check to see if the trap door was open before he started counting inventory because he had never seen it open and unattended in the 12 1/2 years he worked in the office. Langvardt was sidestepping to the north end of the storeroom as he continued taking inventory of the items on the east wall. He did not see the trap door had been left open, and fell through the opening into the crawl space. Langvardt hit his upper back on the edge of the trap door, then landed on his back in the crawl space. Initially, Langvardt did not believe his injuries were particularly serious. However, his back worsened due to a herniated disc in the location where his back struck the trap door, which damaged his spinal cord causing him to lose the use of his legs.

The previous week, Petitjean noticed the exhaust fan in the men's restroom was not working properly. Petitjean told McKinnis about his concern and suggested they call a repair man. Ultimately, either Petitjean or McKinnis called Steve Roberts, a handyman who previously did repair work in the office. Roberts came to the office at some point on Friday, October 12, 2018. Roberts did not complete the repair on the fan that day. He determined the fan motor was broken and the whole fan should be replaced. Roberts left the office, leaving the fan unplugged and inoperable.

Petitjean believed Roberts came to the office to repair the fan while he was out for lunch. He did not see Roberts at the office but believed Roberts had been there because the ladder from the storeroom crawl space was in the men's restroom after Petitjean returned from lunch. Petitjean claimed the ladder was not in the men's restroom earlier

3

that day. Petitjean admitted he went into the storeroom that afternoon and saw the trap door was open, but he did not close it. The record does not reflect why Petitjean entered the storeroom.

In February 2020, Langvardt filed suit against Knight Farms and an unknown agent of Knight Farms, alleging this unknown agent negligently left open the trap door and Knight Farms was vicariously liable for the acts of its agent. Alternatively, Langvardt alleged a premises liability claim against Knight Farms, asserting it negligently failed to maintain a safe premises and failed to adequately train and supervise its employees with regard to correcting or preventing hazardous conditions.

During the course of discovery, Langvardt believed the evidence showed Petitjean was the Knight Farms employee who opened the trap door. In June 2020, Langvardt filed an amended petition naming Petitjean as a defendant. He asserted Petitjean was negligent for opening the trap door and failing to remedy the danger it created and Knight Farms was vicariously liable for Petitjean's actions. Alternatively, Langvardt claimed Knight Farms was at fault on the basis of premises liability for the same reasons set forth in his original petition.

Briefly summarized, Langvardt's theory that Petitjean was negligent hinged on the following circumstantial evidence:

- The overall circumstances reflected the ladder was removed from the crawl space to inspect or repair the fan in the men's restroom;
- Petitjean was the only person in the office who knew there was a ladder in the crawl space, and he had previously gone into the crawl space and used the ladder;
- Petitjean noticed the fan was not working and instigated the call to Roberts to repair the fan;

4

- Petitjean was the only person who recalled seeing the ladder in the men's restroom on Friday afternoon;
- Petitjean admitted he saw the trap door open on Friday afternoon; and
- Petitjean was the person who put the ladder back in the crawl space when the ceiling fan was repaired the following week.

Petitjean and Knight Farms moved for summary judgment, arguing: (1) They were not responsible for the open trap door because they were not the owner or possessor of the property; (2) there was no evidence they knew the trap door was open; (3) the open trap door was an open and obvious danger and Langvardt had not acted reasonably to protect himself from this danger; and (4) they had no duty to protect Langvardt or minimize the risk because it was an open and obvious hazard. The district court granted the motion, generally finding: (1) There was no evidence Petitjean opened the trap door; (2) the hazard was open and obvious; and (3) Petitjean had no duty based on his relationship to the property.

Langvardt moved to reconsider, arguing: (1) The district court erred in failing to analyze Petitjean's legal duty under the standard of ordinary negligence; (2) the district court improperly resolved conflicting evidence in its summary judgment order; and (3) the district court improperly concluded the hazard was open and obvious. The district court denied the motion. It did not expressly address whether Petitjean had a general duty of care. Instead, its ruling largely turned on whether the hazard was open and obvious. From the overall context of its explanation, the district court seemed to hold Petitjean owed no duty of care because he either did not create the hazard or had no duty to warn others because the hazard was open and obvious. The district court explicitly admitted it resolved conflicting evidence as to whether Petitjean opened the trap door and removed the ladder by making credibility determinations. Additional facts are set forth as necessary.

5

ANALYSIS

*Standard of Review and Applicable Legal Principles*

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo. [Citation omitted.]" *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

"[A]n issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013). In other words, "if the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of material fact" for purposes of summary judgment. 296 Kan. at 934. "However, if there is "'any question as to the credibility of witnesses,'" summary judgment should be denied. *Timi v. Prescott State Bank*, 220 Kan. 377, 392, 553 P.2d 315 (1976) (Fromme, J., concurring)." *Clark v. Metropolitan Ins. Co.*, No. 108,924, 2013 WL 3455820, at *2 (Kan. App. 2013) (unpublished opinion).

Summary judgment in a negligence action is generally proper if the only questions presented are questions of law. *Manley v. Hallbauer*, 308 Kan. 723, 726, 423 P.3d 480 (2018). "If a court concludes that a defendant [accused of negligence] did not have a duty

6

to act in a certain manner toward the plaintiff," then a court may grant summary judgment because the existence of duty is a question of law. *Elstun v. Spangles, Inc.*, 289 Kan. 754, 757, 217 P.3d 450 (2009).

> "In negligence cases, 'duty' has been defined as 'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.' Prosser and Keeton on Torts § 53, p. 356 (5th ed. 1984). An act is wrongful, or negligent, only if a prudent person would perceive the risk of damage. The risk to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension. The existence of negligence in a given case will depend upon the particular circumstances which surround the parties at the time of the occurrence on which the controversy is based. [Citations omitted.]" *Schrader v. Great Plains Electric Co-op, Inc.*, 19 Kan. App. 2d 276, 278, 868 P.2d 536 (1994).

*Discussion*

There are two unpersuasive points heavily relied on in Petitjean's brief, which we will address at the outset to avoid further confusion of the issues: (1) whether Petitjean's statement of uncontroverted facts should be deemed admitted because Langvardt failed to comply with Supreme Court Rule 141(b) (2022 Kan. S. Ct. R. at 224) in responding to Petitjean's motion for summary judgment; and (2) whether Langvardt improperly asked the district court to reconsider its summary judgment ruling under his alternative theory of ordinary negligence.

*Petitjean's Rule 141 Argument is Misplaced*

In his statement of facts, Petitjean argues Langvardt did not properly respond to his summary judgment motion in accordance with Rule 141(b). This argument is problematic on its face because he raises it in his statement of facts. Supreme Court Rule 6.03(a)(3) (2022 Kan. S. Ct. R. at 37) provides an appellee's brief must contain:

"A statement, *without argument*, of the facts or a statement acknowledging the correctness of the appellant's statement of the facts or adding corrections and supplemental statements to the extent necessary. The statement *must be supported by references to the record* in the same manner as required of the appellant under Rule 6.02." (Emphases added.)

Petitjean complains about a lack of citation to the record in Langvardt's response to the statements of uncontroverted facts in Petitjean's summary judgment motion. Yet, he fails to cite to Langvardt's responses in the record on appeal in this argumentative portion of his statement of facts. Instead, Petitjean states he notes various places "[w]here [Langvardt] attempted (but failed) to controvert a fact . . . so this Court can review [Langvardt's] attempt in light of the citation requirement of [Rule 141]." Petitjean continues with his own statement of facts, simply noting various facts Langvardt attempted to controvert. However, Petitjean fails to explain how Langvardt's responses violate Rule 141. In other words, Petitjean inappropriately raises an argument in his statement of facts then fails to properly argue the point. Arguments not properly briefed are deemed waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

Further, Petitjean fails to acknowledge the complete language of Rule 141(f)(2), which applies when "the court orders that the motion is deemed finally submitted because the opposing party failed to comply timely with subsection (b), in which case the uncontroverted factual contentions stated in the moving party's memorandum or brief are deemed admitted for purposes of the motion." 2022 Kan. S. Ct. R. at 224. Here, the district court never ordered that Petitjean's motion would be deemed finally submitted due to a failure by Langvardt to comply with Rule 141(b).

The district court made no affirmative ruling on the basis of Rule 141, and Petitjean did not request clarification of the district court's findings or seek a more definitive ruling on this point. But even if we considered the argument on the merits, we

8

are unpersuaded. As our Supreme Court held in *Dickerson v. Kansas Dep't of Revenue*, 253 Kan. 843, 849, 863 P.2d 364 (1993), a nonmoving party's failure to comply with Rule 141(b) does not mean the movant's statements of uncontroverted fact must be deemed admitted. Rather, the district court may still find there are genuine issues of material fact as long as the nonmoving party's failure to cite to the record does not frustrate the district court's ability to determine whether factual issues are controverted.

We observe nothing in the district court's ruling showing its ability to make the necessary determinations was impeded. The district court clearly understood Langvardt's claims turned on circumstantial evidence, and the controlling points of material fact were relevant to two general concerns: (1) whether the fact the trap door was left open was an open and obvious condition and (2) whether Petitjean left the trap door open. We find Langvardt's response sufficiently set forth the relevant facts and circumstances on which he relied to show these points were disputed on summary judgment. Further, the nature of Langvardt's claim—one based almost entirely on circumstantial evidence—is generally not amenable to specific citations to the record for these points. The district court clearly recognized as much; it was not confused as to the facts and circumstances on which Langvardt relied. The district court was simply unpersuaded by Langvardt's arguments.

There was no impediment to the district court's ability to determine the relevant points of dispute. We find Petitjean's Rule 141 argument improperly raised, insufficiently briefed, and ultimately unpersuasive on the merits.

*Langvardt Did Not Present an Improper Legal Theory in His Motion to Reconsider*

Petitjean argues Langvardt improperly argued in his motion to reconsider that ordinary negligence, not just premises liability, applied. Petitjean's argument is unpersuasive. Langvardt filed an amended petition on June 8, 2020, alleging Petitjean

9

was negligent for opening the trap door and leaving it open or failing to warn others it was open. Langvardt further alleged Knight Farms was vicariously liable for Petitjean's negligent actions. Langvardt also asserted a separate theory of premises liability against Knight Farms.

Petitjean moved for summary judgment on July 9, 2021. In his motion, Petitjean advanced arguments solely related to Langvardt's theory of premises liability, asserting Petitjean and Knight Farms had no duty to assure the safety of the storeroom because ILS owned the building and ILS employees were responsible for the day-to-day operations of the office and building maintenance. The remainder of Petitjean's arguments related to whether it was an open and obvious condition, which was likewise grounded in the theory of premises liability. Petitjean concluded his argument, stating:

> "As Defendants were neither the owner or possessor, nor had control of, the storage closet where the open and obvious dangerous condition existed, Defendants did not owe a duty to guard Plaintiff from harm. Likewise, the facts did not rise to there being a stricter duty to protect Plaintiff. Additionally, no duty existed to shelter Plaintiff from his own inattentive and careless behavior in failing to watch out for the open and obvious danger associated with the exposed crawl space hole. For these reasons, Defendants' motion for summary judgment should be granted."

Petitjean's argument on appeal is particularly unpersuasive given his own assertions at the summary judgment hearing. At the hearing, Petitjean began his argument, stating:

> "[T]his is our motion for summary judgment and I appreciate the court's comments. It's not my intent to belabor. You can read as well as I can talk so I'm not going to go into great length, but *essentially this is a negligence action filed by Mr. Langvardt against Mr. Petitjean and Knight Farms* and as we know, in order to establish negligence you have to establish a duty, a breach of a duty, injuries and causation. Our motion is [focused] on those first two elements[: First], did either Mike Petitjean or Knight Farms have a duty to

Steve Langvardt under the facts present in this case and, secondly, was there a breach of any duty that was owed by Mike Petitjean or Knight Farms." (Emphasis added.)

Petitjean continued his point, generally arguing there was no legal duty under any theory of premises liability, asserting:

"*It's been our contention . . . in our motion for summary judgment that neither Mike Petitjean nor Knight Farms owed a duty to Mr. Langvardt under the circumstances present.* The area where the accident occurred was not an area that was leased by them. They leased the four offices. The area of the accident was a storage room that was accessed by multiple people. Knight Farms clearly had access to it and had some things stored in there. ILS had some things stored in there. Within that storage room there was an access door to a crawl space below. It was used to access heating and air. It was used to access a well system monitoring they had for the feedlot, but *those were things that were all under the control of ILS. They were the owner. They have the obligation to maintain the property in a reasonably safe condition.* As tenants we would have an obligation to maintain our areas of that building, but *we don't have an obligation to maintain those common areas or the building itself. So simply put, we don't think we owe any duty in this case.*" (Emphases added.)

At the hearing on the motion for summary judgment, Langvardt began his argument, stating:

"Your Honor, I think the parties agree as to the case law and the law in Kansas on premises duty, and [Petitjean's counsel] cited it, but basically the general rule is that in Kansas is that the owner or occupiers—and the key word there is occupier—of real estate owe a duty to maintain the premises in a reasonably safe condition. The issue here, *as announced by counsel*, is whether the occupier of land, in this particular case Knight Farms and their employee, Mike Petitjean, had control of the premises." (Emphasis added.)

11

Langvardt, as the nonmoving party, properly responded to the arguments advanced by Petitjean. Although Petitjean acknowledged "essentially this is a negligence action filed by Mr. Langvardt against Mr. Petitjean and Knight Farms," he failed to address whether there was a breach of duty under the standard of ordinary negligence. The record reflects Petitjean made no motion for summary judgment on Langvardt's ordinary negligence claim. Accordingly, Langvardt had no obligation to argue against a motion not made.

Petitjean's reliance on the authorities cited in his brief is misplaced. In *Van Skiver v. United States*, 751 F. Supp. 1522, 1523 (D. Kan. 1990), the underlying ruling involved competing motions for summary judgment. The factual and procedural background is sparse, and it is unclear on what basis the plaintiffs moved to reconsider and whether they sought reconsideration of the denial of their motion for summary judgment, the district court's grant of the defendant's summary judgment motion, or both. 751 F. Supp. 1522-24. Because of the *Van Skiver* court's limited explanation, we would be hard-pressed to consider it as pertinent authority. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018) (party must support its argument with citation to pertinent authority).

Petitjean also relies on *Williams v. Weber*, 905 F. Supp. 1502 (D. Kan. 1995), where the moving party attempted to advance a new legal theory in a motion to reconsider the denial of its summary judgment motion. The court overruled the motion for reconsideration, finding:  "A motion for reconsideration may not be used to raise new issues for the first time after entry of summary judgment" by the movant. 905 F. Supp. at 1514. However, under these facts, in line with Rule 141(b), Langvardt was not precluded from raising in his motion for reconsideration the fact Petitjean had not sought summary judgment on Langvardt's claim for ordinary negligence.

Petitjean further cites *Antrim, Piper, Wenger, Inc. v. Lowe*, 37 Kan. App. 2d 932, 159 P.3d 215 (2007), a breach of contract claim between a real estate broker and a husband and wife as sellers of real estate. The broker claimed he was owed a commission because the buyer learned of the real estate through the broker's website, although the sellers finalized the sale without the broker's assistance. The district court granted summary judgment in favor of the broker. The sellers moved to alter or amend judgment, which the district court denied. On appeal, the sellers argued the district court erred in denying their motion to alter or amend the judgment because the broker did not have the wife's consent to sell the property in which she had a one-half interest. The panel noted this argument was never presented to the district court and explained:

"In addition, the purpose of a motion to alter or to amend under K.S.A. 60-259(f) is to allow a trial court an opportunity to correct prior errors. *Denno v. Denno*, 12 Kan. App. 2d 499, 501, 749 P.2d 46 (1988). Yet, where a summary judgment is rendered and where a party moves to alter or to amend the judgment, a trial court in determining the validity of the summary judgment should limit its consideration to the matters which were before the court when it entered the judgment in the first instance. *State Bank of Burden v. Augusta State Bank*, 207 Kan. 116, 483 P.2d 1068 (1971). Because [the wife's] alleged lack of consent to the sale of the ranch was not before the trial court when it entered the summary judgment, the trial court properly denied the motion to alter or to amend." *Antrim*, 37 Kan. App. 2d at 939-40.

Here, Langvardt's ordinary negligence claim was a legal and factual issue before the district court. Langvardt correctly pointed out to the district court there was no pretrial order at the time the summary judgment motion was filed. Thus, there was nothing defining the controlling legal issues more narrowly than the scope of Langvardt's pleadings. Langvardt responded to Petitjean's premises liability arguments because those were the only arguments raised in Petitjean's summary judgment motion.

Petitjean now seeks to fault Langvardt—the nonmoving party—for failing to point out the incompleteness of Petitjean's summary judgment motion. We find Petitjean's argument on this point unpersuasive. As previously stated, "the purpose of a motion to alter or to amend under K.S.A. 60-259(f) is to allow a trial court an opportunity to correct prior errors." *Antrim*, 37 Kan. App. 2d at 939. Here, Langvardt properly used his motion to reconsider to give the district court an opportunity to correct its error in granting summary judgment on Langvardt's ordinary negligence claim when, in fact, Petitjean failed to seek summary judgment on that claim.

### *The District Court Erred in Granting Petitjean's Motion for Summary Judgment on Langvardt's Ordinary Negligence Claim*

Turning to the issues raised in Langvardt's brief, the district court erred in granting Petitjean's motion for summary judgment because the district court inappropriately resolved credibility issues and weighed conflicting evidence in favor of Petitjean. See *GFTLenexa, LLC*, 310 Kan. at 981-82; *Clark*, 2013 WL 3455820, at *2. However, this error only affects the district court's ruling on Langvardt's ordinary negligence claim. The district court was correct in granting summary judgment on the basis of premises liability because Langvardt failed to show any duty of Petitjean or Knight Farms arising from a special relationship to the property.

#### *Premises liability*

On appeal, Langvardt does not rely on his alternative theory of premises liability; rather, he clearly asserts: "Petitjean's liability stems not from his breach of duty as an owner, occupier, or possessor of the Office, but instead from the breach of his duty to exercise reasonable care under the circumstances." We need not delve deeply in our analysis of this point. Langvardt's argument on appeal regarding premises liability is an

14

alternative—and very much secondary—argument. And his limited explanation of this point is ultimately unpersuasive.

Petitjean is correct the district court properly granted summary judgment on the issue of premises liability because there was no evidence he or Knight Farms were the owner, sole occupier, or controller of the property. Petitjean explains:

> "The general rule of premises liability is that a landowner owes a duty of reasonable care to all visitors. *Bonnette v. Triple D Auto Parts Inc.*, 55 Kan. App. 2d 130, 137, 409 P.3d 865 (2017). In order for a defendant to be liable for failure to keep the premises in a reasonably safe condition, the defendant must be the owner, occupier, or controller of the premises. *Miller v. Zep Mfg. Co,*, 249 Kan. 34, 41, 815 P.2d 506 (1991)."

Langvardt relies on *Rogers v. Omega Concrete Sys.*, 20 Kan. App. 2d 1, 5, 883 P.2d 1204 (1994), for the proposition "a party may not be held responsible for a condition which he or she did not cause and which he or she has no ability to remedy." Langvardt asserts: "By implication, then, a party can be held responsible for a dangerous condition when (1) the party *did* cause the dangerous condition to be present, and (2) when the party *did* have the ability to remedy the dangerous condition." Petitjean is correct that Langvardt misstates the rule in *Rogers* because Langvardt ignores the *Rogers* panel's earlier explanation: "In a premises liability case, in order to be liable, the party charged must have had control over the premises in question. It is obvious that, without control, the responsibility for the dangerous or hazardous condition cannot exist." 20 Kan. App. 2d at 5.

Langvardt unpersuasively argues Petitjean had the ability to remedy the hazard by shutting the trap door. This argument demonstrates no special relationship to the property; anyone who accessed the storeroom—whether an owner, employee, visitor, or trespasser—could have closed the trap door. The district court properly granted summary

15

judgment on Langvardt's premises liability claim because there was no evidence reflecting Petitjean had a duty based on a special relationship to the property.

*Ordinary negligence*

Langvardt's primary contention on appeal is the district court erred by focusing its summary judgment analysis on premises liability rather than ordinary negligence. Langvardt's ordinary negligence argument is persuasive. Langvardt correctly notes there are four essential elements to negligence:  "(1) a duty owed to the plaintiff, (2) breach of that duty, (3) causation between the breach of duty and the injury to plaintiff, and (4) damages suffered by the plaintiff." *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 622, 413 P.3d 432 (2018).

Here, causation and damages are not in dispute. The only questions before the district court were (1) whether Petitjean owed a duty of care to Langvardt and (2) whether Petitjean breached that duty.

*Duty of care*

Whether a duty of care exists is a question of law; thus, we generally need not consider the propriety of the district court's factual findings to resolve this issue. See *Elstun*, 289 Kan. at 757. Langvardt is correct that Kansas law imposes a duty on all persons to exercise reasonable care to avoid injuring others. See *Striplin v. Kansas Gas & Electric Co.*, 204 Kan. 324, 327, 461 P.2d 825 (1969) (noting "the universal rule . . . that everyone . . . is under a duty to exercise reasonable care—in the circumstances—to avoid injury to others"). However, under Langvardt's specific theory of negligence, Petitjean had a duty to close the trap door because Petitjean allegedly opened it. On appeal, Langvardt argues:  "Petitjean had a duty to close the trap door after opening it, or at the very least, warn others of the hazard he had created by leaving the trap door open."

16

Langvardt does not argue, under the standard of ordinary negligence, Petitjean had a duty to close the trap door simply because he saw it was open, regardless of whether he opened it.

Langvardt is correct the district court's duty analysis in its summary judgment ruling was generally grounded in considerations of premises liability, although its finding on this point was inarticulate. Specifically, the district judge stated: "[W]hat I have to look at is what evidence is there specifically against Michael Petitjean. I have to look at the rules regarding his duties, the rules regarding his relationship to the building and his status as an occupier, his duty to warn." The district judge did not make an explicit finding that Petitjean owed no legal duty of care to Langvardt; however, the district judge stated: "I'm going to adopt the arguments made by [Petitjean] and grant the motion for summary judgment." Petitjean explicitly argued he owed no duty of care to Langvardt because he was not the owner or sole occupant of the building and had no duty to remedy any dangerous conditions because ILS owned the building.

In ruling on Langvardt's motion to reconsider, the district court acknowledged Langvardt argued the district court erred in its summary judgment ruling by failing to "determine as a matter of law whether the defendant breached a duty of exercising reasonable care under the circumstances." The district court did not expressly address whether the law imposed a general duty of care on Petitjean to avoid injuring others. Rather, the district court's ruling on this point largely pivoted to whether the open trap door was an open and obvious condition, stating:

> "The question became whether Michael Petitjean owed a duty to everybody to close the trap door that everyone knew was there when he saw it open three days earlier while repairs were being done on the bathroom fan. Clearly, [Langvardt] noticed the trap door might be open and was put on notice that it might be open because he saw the ladder that was in the crawl space in the bathroom. It was an open and obvious danger. That's pretty obvious. We know that [Langvardt] was wearing his glasses and the room was well lit.

17

Tragically, [Langvardt] didn't look down. We wouldn't be here today if he had. I reject, and I did before, the contention that all open and obvious danger cases involve a disputed question of fact. I don't think they do."

The district court failed to make an explicit ruling on Petitjean's legal duty. But from the overall context of its explanation, the district court held Petitjean owed no duty of care because he either did not create the hazard or had no duty to warn others because the hazard was an open and obvious condition. Whether Petitjean created the hazard is a factual question. Accordingly, we must determine whether the district court inappropriately resolved the evidence in determining Petitjean did not owe a duty of care.

*The district court erred when it resolved conflicting evidence to find Petitjean did not open the trap door.*

The district court's resolution of this point was admittedly premised on explicit credibility findings—specifically, Petitjean's denial that he opened the trap door and removed the ladder. In explaining its decision not to reconsider its summary judgment ruling, the district court reasoned:

"Could somebody else have gotten the ladder out to examine the fan? If [Petitjean] noticed the fan wasn't working, could [somebody else have] noticed the fan wasn't working? It didn't make sense that Michael Petitjean would tell people the fan's not working, call a maintenance man and then go get a ladder and get up there and try to fix it himself."

The district court explicitly made credibility determinations in reaching this conclusion, stating:

"There is no more circumstantial evidence that Michael Petitjean removed the ladder and left the trap door open than for anyone else who denied it. Everyone else denied it, he

18

denied it, it must be him. That's why I got into the issues about his credibility before because I was searching for something that I could hang my hat on to deny the motion for summary judgment. I was diligently searching for that because I have to draw all inferences in favor of [Langvardt] and I knew that. That's why I was getting into that."

Indeed, the district court's summary judgment ruling reflected credibility determinations and weighing of conflicting evidence. The district judge stated:

"[Langvardt's counsel] tries to point the finger at Michael Petitjean as the one who got the ladder out and put it up in the bathroom and that he's just lying about it, being dishonest about having done it because of the tragedy that unfolded. If that's the case, one would wonder why he would also not lie about seeing the trap door open. It would have been just as easy for him to say I don't know how that ladder got there and I never saw the trap door open."

The district judge further reasoned:

"[Petitjean] noticed the fan. One question would be well, if he noticed the fan could somebody else have noticed the fan? He must have been the one who called the maintenance man. None of the other I think fifteen employees say they removed the ladder. Michael Petitjean says he didn't remove the ladder and, as [Petitjean's counsel] pointed out, how do we weigh that differently? Everybody denies having moved the ladder, so I'm not sure I find that to be circumstantial evidence that Michael Petitjean removed the ladder. Everybody denies it."

Additionally, the district judge stated:

"[I]f somebody notices the fan I don't see any evidence that they would only notice the fan not working but they went and got a ladder and got up there and put their ear next to it they would somehow notice it from the ground and then go to tell somebody else you need to call a maintenance person, does it make logical sense that after doing that which is uncontroverted in the facts that he would go get a ladder and set it up and try to repair

19

it himself? I'm not sure I see much more circumstantial evidence of Petitjean's fault than any other employee, although some of them clearly have alibis; they weren't there."

The district court erred in its resolution of this point. At the risk of belaboring the obvious, the trap door did not open itself and the ladder did not carry itself to the men's restroom; someone was responsible for doing those things. If, as the district court found, "[t]here [was] *no more circumstantial evidence* that Michael Petitjean removed the ladder and left the trap door open than for anyone else who denied it," there was just as much circumstantial evidence of Petitjean doing so as everyone else. (Emphasis added.) Put another way, it was just as likely as not that Petitjean did as Langvardt alleged. Thus, a reasonable fact-finder could have come to differing conclusions about whether Petitjean opened the trap door and removed the ladder. The district court admitted it resolved these reasonable competing inferences by weighing credibility—something it is expressly prohibited from doing on summary judgment. See *GFTLenexa, LLC*, 310 Kan. at 981-82; *Clark*, 2013 WL 3455820, at *2.

Contrary to the district court's findings, there was sufficient circumstantial evidence from which a reasonable fact-finder could conclude Petitjean was the person who opened the trap door and removed the ladder. In his brief, Langvardt extensively sets forth the circumstantial evidence supporting his claim Petitjean retrieved the ladder. Generally summarized, the evidence reflected Petitjean knew the ladder was ordinarily kept in the crawl space and admitted to seeing the trap door open and the ladder in the men's restroom on Friday, October 12, 2018. Other than Langvardt, Petitjean was the only person who regularly worked in the office who knew the ladder was kept in the crawl space and was present on October 12, 2018. Earlier that week, Petitjean noticed the fan was not working and instigated the call for Roberts to repair the fan. Petitjean believed Roberts came to work on the fan while he was out to lunch but knew the repairs had not been completed because the fan was still not working later that afternoon. The

20

ladder was still in the men's restroom, the trap door was still open, and the repairs to the fan had not been completed at the time of Langvardt's fall.

Roberts was the only maintenance person who visited the office on October 12, 2018. Roberts denied retrieving the ladder and stated he would not have asked one of the office employees to retrieve the ladder for him. Roberts had his job trailer with four of his own ladders when he arrived. Roberts could not recall whether a ladder was already in the men's restroom when he arrived, but if one was not there, he would have gotten his own. Roberts denied going into any area of the office besides the men's restroom. Petitjean knew Roberts from his prior repair work at the office and did not believe Roberts knew there was a ladder stored in the crawl space. Petitjean also did not recall any employee providing Roberts with a ladder on previous jobs. However, Petitjean also did not recall seeing Roberts bring his own ladder for previous jobs.

Petitjean believed some of the feedlot employees had previously used the ladder to perform tasks outside of the office and may have known it was in the crawl space but could not recall which feedlot employees might have used the ladder or known where it was stored. However, Petitjean had not seen any of the office workers or feedlot employees retrieve the ladder or attempt to fix the fan on their own, and he did not recall seeing any feedlot employees enter the storeroom on October 12, 2018, or hearing anyone discussing opening the trap door or retrieving the ladder.

Based on this evidence, a reasonable fact-finder could conclude there was essentially only one reasonable explanation why the trap door was left open—someone removed the ladder and took it to the men's restroom to inspect or work on the exhaust fan. This necessarily raises two pertinent questions: (1) Who *would* have taken it? (2) Who *could* have taken it? Rationally, the ladder would have been taken by someone who was either inspecting or repairing the fan or retrieving it on their behalf. Here, the only two people admittedly concerned with the repairs to the fan who knew a ladder was used

to do so were Petitjean and Roberts. The only rational inference as to who could have taken the ladder is someone who was physically present at the time it was taken and knew where it was stored. Of those present at the time, the only person who admittedly knew the ladder was stored in the crawl space was Petitjean. The only other persons believed to have known where the ladder was stored were some of the feedlot employees. Thus, there are seemingly only three reasonable inferences a rational fact-finder could arrive at as to who retrieved the ladder:  (1) Petitjean; (2) Roberts; or (3) one of the feedlot employees.

Petitjean denied retrieving the ladder and denied seeing it in the men's restroom prior to Roberts' arrival. These are disputed points of fact turning on credibility, which must be resolved by a jury. See *City of Neodesha v. BP Corp. North America*, 295 Kan. 298, 324, 287 P.3d 214 (2012). Based on the evidence, a reasonable fact-finder could conclude Petitjean took the ladder to inspect the fan and left it there for Roberts to use prior to his arrival. A reasonable fact-finder could also conclude Petitjean took the ladder and inspected the fan after Roberts left because Petitjean noticed the fan was still not working later that afternoon.

To be clear, there are other rational inferences a reasonable fact-finder could derive from this evidence. For example, it is possible Roberts was mistaken or dishonest about not retrieving the ladder. Although Petitjean did not believe Roberts knew where the ladder was stored and Roberts denied knowing, it is possible Roberts did, in fact, know the ladder was stored in the crawl space. Likewise, it is possible Roberts was mistaken or dishonest about not asking someone to retrieve the ladder. Thus, it is possible one of the feedlot employees retrieved the ladder at Roberts' request. It is also possible that, unbeknownst to Petitjean or Roberts, one of the feedlot employees noticed the issue with the exhaust fan and retrieved the ladder on their own initiative to inspect or attempt to repair the fan. However, these are all factual issues turning on conflicting evidence, credibility determinations, or both, to be resolved by a jury.

Moreover, these potential competing inferences—however reasonable—do not preclude a reasonable fact-finder from inferring Petitjean retrieved the ladder. All reasonable inferences should have been resolved in Langvardt's favor as the nonmoving party. See *GFTLenexa, LLC*, 310 Kan. at 981-82. Here, the evidence supported a reasonable inference Petitjean opened the trap door and retrieved the ladder. Accordingly, the district court improperly resolved this factual question.

> *As applied to Langvardt's negligence claim, the district court erred in finding Petitjean owed no legal duty of care.*

The parties do not meaningfully dispute Petitjean owed a legal duty to prevent the risk of harm caused by the open trap door if he was the person who left it open. Because the evidence supports a reasonable inference Petitjean opened the trap door, the district court erred in finding Petitjean did not have a duty to close it or warn others it was open.

There can be no reasonable dispute the open trap door created a danger to others. And the law clearly imposes a duty on all persons to act reasonably under the circumstances to avoid harming others. See *Striplin*, 204 Kan. at 327. A legal duty arises based on how a reasonable person would act under the circumstances and the extent to which a reasonable person would appreciate the risk created by his or her actions. See *Schrader*, 19 Kan. App. 2d at 279. Here, Petitjean knew the trap door opened to a crawl space approximately 5 feet below the storeroom floor. A reasonable person in Petitjean's circumstances would have appreciated the risk created by a potential fall hazard of that nature. A reasonable person would have also understood that the trap door is not inherently dangerous; leaving it open creates the danger. Therefore, a reasonable person would have simply closed the trap door after retrieving the ladder.

Petitjean attempts to sidestep this legal duty by arguing Langvardt was not a foreseeable plaintiff. See *Manly*, 308 Kan. at 726 ("Kansas law limits the person or

23

persons to whom a duty extends, however. 'To find a legal duty to support a negligence claim, [1] the plaintiff must be a foreseeable plaintiff and [2] the probability of harm must be foreseeable.' *Berry v. National Medical Services, Inc.*, 292 Kan. 917, Syl. ¶ 1, 257 P.3d 287 [2011]."). Specifically, Petitjean asserts the hazard was open and obvious; therefore, Langvardt was negligent in failing to recognize it. He argues he had no duty to anticipate Langvardt's negligence.

In support of his point, Petitjean relies on *Mid-Century Ins. Co. v. Latimer*, 211 Kan. 810, 812, 508 P.2d 935 (1973). The major issue there was whether the victim had a duty to anticipate the tortfeasor's negligence and, as a result, whether the tortfeasor could present a contributory negligence argument to the jury. As we further explain below, *Mid-Century Ins. Co.* actually shows why the open trap door would not have been considered an open and obvious condition. And it further demonstrates how Petitjean's arguments about the nature of the hazard actually present factual questions of comparative fault for a jury to resolve, which Langvardt correctly argues in his brief.

We find Petitjean's open and obvious condition argument unpersuasive as a matter of law and, in fact, counterproductive to his argument. His arguments on this point before the district court were grounded in the theory of premises liability. And, on appeal, Petitjean does not cite any authorities wherein the open and obvious condition rule has been applied to ordinary negligence claims. We note Kansas precedent recognizes:

> "The general rule *of premises liability* is that a *landowner* owes a duty of reasonable care to all *visitors*. *Jones v. Hansen*, 254 Kan. 499, 509-10, 867 P.2d 303 (1994). But a landowner generally has no duty to warn of or to make safe any dangerous conditions that are known or obvious to a visitor. *Miller v. Zep Mfg. Co.*, 249 Kan. 34, 43, 815 P.2d 506 (1991) (citing *Balagna v. Shawnee County*, 233 Kan. 1068, 1083, 668 P.2d 157 [1983])." (Emphases added.) *Bonnette v. Triple D Auto Parts Inc.*, 55 Kan. App. 2d 130, 137-38, 409 P.3d 865 (2017).

But even assuming the open and obvious condition rule could negate a legal duty under the ordinary negligence standard, Langvardt is correct summary judgment should have been denied. As Langvardt points out, he had visited the storeroom thousands of times in the course of his employment and had never seen the trap door left open and unattended. Therefore, he claims he "had no reason to be meticulously checking his path as he walked."

In contrast, Petitjean contends:

"The fact it was open on the date of the accident, and unobstructed to [Langvardt's] view in the well-lit storeroom, should have alerted him to something being 'out of the norm' and the need to look out for his own safety. Here, a reasonably observant and careful person would have seen the unobstructed, open access door and exposed hole in the ground, would have appreciated the danger associated with the hole and would have taken steps to avoid it."

Petitjean's argument is problematic as it ignores other relevant circumstances at the time of Langvardt's accident. In particular, the trap door was on the north end of the storeroom, which was not immediately visible upon entering. Langvardt entered the storeroom from the west door and had to pass through a narrow entryway running eastward. There was a wall in this portion of the storeroom blocking his view of the trap door, which was in the part of the storeroom that opened up to Langvardt's left as he neared the east wall. Langvardt proceeded directly to the east wall and began taking inventory of the veterinary medications stored on the shelves along that wall. He continued taking inventory of the items on the east wall, stepping sideways toward the north end of the room until he fell through the trap door opening.

Petitjean's argument generally assumes a reasonable person would have surveyed the entire room to check for hazards on the floor before taking inventory of the items on the shelves or otherwise diverted their attention from the task at hand—counting and

writing down the items in inventory—and looked down at the floor between each step. Taking Petitjean's argument to its logical end is troubling because, here, the trap door itself presented no particular danger. The only danger was if it had been left open and unattended, which Langvardt had never seen before. Thus, the only way the trap door presented an appreciable danger was if someone negligently failed to close it. Yet, as Petitjean argues in his brief, Kansas law imposes no duty to anticipate the negligence of others. See *Mid-Century Ins. Co*, 211 Kan. at 812.

Whether a condition is open and obvious is judged using a reasonable person standard. ""Obvious" means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.' Restatement [Second] of Torts § 343A, comment b, p. 219." *Didde v. City of Chapman*, No. 106,090, 2012 WL 3822735, at *3 (Kan. App. 2012) (unpublished opinion). Here, the risk posed by the trap door would not have been apparent to and recognized by a reasonable person in Langvardt's position exercising ordinary perception, intelligence, and judgment. There was no inherently appreciable risk by virtue of the fact there was a trap door in the floor; the risk turned on whether it was left open. The trap door was not in Langvardt's line of sight as he entered the room. He did not see it was open and had no reason to expect it would be. The only reason it would have been left open and unattended would be as the result of someone else's negligence—something he had no duty to anticipate and no reason to expect. See *Mid-Century Ins. Co.*, 211 Kan. at 812.

To the extent there are questions about whether Langvardt could or should have been more attentive, Langvardt is correct those questions can be appropriately resolved by a jury as an issue of comparative fault. Perhaps Langvardt could have been less hasty in taking inventory. Perhaps Langvardt also should have given more thought to whether the trap door might have been left open given he knew there was a trap door in the storeroom, knew a ladder was kept in the crawl space beneath the trap door, and had seen

the ladder in the men's restroom the previous week. However, there was little to no apparent reason for Langvardt to believe that if the ladder was taken out of the crawl space and placed in the men's restroom, then the person who retrieved the ladder had not shut the trap door. Clearly, the trap door could be shut and was, in fact, shut following Langvardt's accident despite the ladder remaining in the men's restroom for some time thereafter. If, as Petitjean asserts, Langvardt's conduct was negligent in failing to "take measures to protect himself," a factual question on comparative fault should be submitted to the jury at trial. See 211 Kan. at 819.

The district court erred in finding Petitjean did not owe a duty of care to Langvardt. The evidence supports a reasonable inference Petitjean was the person who opened the trap door in the storeroom. It cannot be reasonably disputed the open trap door was, in fact, a hazard. If Petitjean created this hazard, he had a duty to remedy it or warn others of the danger. We find the open and obvious condition rule legally erroneous as applied to Langvardt's ordinary negligence claim. However, even assuming the open and obvious rule could apply, the facts do not show the hazard was an open and obvious condition as a matter of law.

*Breach of duty*

Whether a duty has been breached is a question of fact. *Rogers*, 20 Kan. App. 2d at 10. There is no genuine dispute of material fact as to whether Petitjean breached the duty. Petitjean admitted he saw the trap door was open the Friday before Langvardt's accident and he did not close it. Petitjean also did not warn anyone the door was left open. For purposes of summary judgment, the evidence supporting a reasonable inference that Petitjean opened the trap door and removed the ladder also showed he had a duty to remedy the hazard. His admitted failure to do so showed he breached this duty.

27

*The District Court Erred in Denying Langvardt's Motion to Reconsider*

A motion to reconsider is generally treated as a motion to alter or amend judgment under K.S.A. 2021 Supp. 60-259. *Honeycutt v. City of Wichita*, 251 Kan. 451, 460, 836 P.2d 1128 (1992). The standard of review on such motions is abuse of discretion. *Exploration Place, Inc. v. Midwest Drywall Co.*, 277 Kan. 898, 900, 89 P.3d 536 (2004). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

Here, the district court abused its discretion based on multiple errors of law. As previously discussed herein, Langvardt's ordinary negligence claim was properly set forth in his amended petition, and there was no pretrial order narrowing the scope of his claims when Petitjean moved for summary judgment on the basis of premises liability—a separate claim set forth in Langvardt's amended petition. In other words, the district court granted summary judgment in full despite the fact Petitjean—whether or not he realized it—effectively moved for partial summary judgment.

In ruling on Langvardt's motion to reconsider, the district court erred as a matter of law in adhering to its prior summary judgment ruling when it explicitly admitted its resolution of the facts turned on credibility determinations. See *GFTLenexa, LLC*, 310 Kan. at 981-82; *Clark*, 2013 WL 3455820, at *2. The district court further erred as a matter of law in relying on its erroneous factual findings to conclude Petitjean did not have a duty of care or breached such duty. The district court also erred as a matter of law in concluding the open and obvious condition rule applied to Langvardt's ordinary negligence claim. But even assuming the rule *could* apply, the district court erred in determining, under the facts of this case, the open trap door was an open and obvious condition as a matter of law.

28

The district court did not err in adhering to its prior ruling granting summary judgment in favor of Petitjean on Langvardt's alternative claim of premises liability. However, the district court should have reconsidered its summary judgment ruling and denied summary judgment on Langvardt's ordinary negligence claim. We reverse and remand with instructions that Langvardt be allowed to proceed on his ordinary negligence claim.

Affirmed in part, reversed in part, and remanded with directions.

* * *

MALONE, J., concurring: I agree completely with the majority's disposition of this case. The district court correctly granted summary judgment on Steve Langvardt's premises liability claim but erred in granting summary judgment on Langvardt's ordinary negligence claim. I write separately only to succinctly summarize my analysis of the main issues presented in this appeal.

As for the procedural arguments raised by Michael Petitjean and Knight Farms, Inc. (Knight Farms), I agree with the majority that Langvardt complied with Supreme Court Rule 141(b) (2022 Kan. S. Ct. R. at 224) in responding to the defendants' motion for summary judgment. I also agree that Langvardt did not present an improper legal theory in his motion for the district court to reconsider its summary judgment ruling. Langvardt's amended petition stated two causes of action: (1) an ordinary negligence claim against Petitjean including a vicarious liability claim against Knight Farms, and (2) a premises liability claim against Knight Farms. The defendants' motion for summary judgment addressed only the premises liability claim; it did not address the ordinary negligence claim. Langvardt responded to the arguments raised by the defendants and had no obligation to argue against a motion that was not made. Thus, Langvardt could ask the district court to reconsider its ruling as to the ordinary negligence claim.

Turning to the merits, I agree the district court properly granted summary judgment on the premises liability claim because there was no evidence that Knight Farms was the owner, sole occupier, or controller of the premises. The evidence showed that Innovative Livestock Services, Inc. was obligated to maintain the premises.

I also agree the district court erred in granting summary judgment on Langvardt's ordinary negligence claim. On this claim, Petitjean had a duty to close the trap door if he opened it because it created a danger where it was reasonably foreseeable that someone could be injured. As for whether Petitjean opened the trap door, there was sufficient circumstantial evidence from which a reasonable person could find that he did, and the district court improperly resolved conflicting evidence in finding that he did not open it. Finally, under the circumstances of this case, whether the hazard was open and obvious is a fact question and cannot be decided as a matter of law. I agree we should remand to allow Langvardt to proceed with his ordinary negligence claim against the defendants.